Steele et al. v. Etheridge.

ADAM J. STEELE, et al,

*vs.*

CHARLES ETHERIDGE.

In an action to recover the price of goods sold and delivered, when the defendant in his answer denies the sale of the goods and avers that the transaction was a contract of agency; and it appears that the alleged purchase and directions for shipment of the goods were made by letters from the defendant to the plaintiffs, the letters are, in the first instance, the only competent evidence of the sale, and oral testimony is incompetent to establish the fact.

Where written correspondence between the parties is the only competent proof of a contract, and oral evidence of such contract is permitted to go to the jury for their consideration, which the court cannot say was without influence on the jury, and throughout the trial the plaintiffs proceeded upon the theory of proving the sale by parol evidence, and upon this theory the case was submittted to the jury, although a small portion of the letters were offered in evidence, and the balance of the correspondence was introduced by the defendant, this court does not feel called upon to examine the written evidence to ascertain whether the letters establish a contract of sale or of agency, but upon a finding for the plaintiffs a new trial will be granted.

Where, in an action for the sale and delivery of goods, the defendant in his answer, as a *counter claim*, avers that the transaction claimed by the plaintiffs as a sale, was not a sale, but a contract of agency for the care and sale of such goods, and admits the delivery to him of the goods under such contract of agency; the sale of a portion of the goods; the receipt of the proceeds thereof, and the possession of the unsold articles; but does not offer to account to the plaintiffs for any of the goods sold, or to deliver the unsold portion thereof, nor state any facts entitling the plaintiffs to such account or delivery, but avers the breach of the contract by the plaintiffs and certain damages by reason of such breach, the answer does not state facts sufficient to constitute a counter claim.

Steele et al. v. Etheridge.

In a proper case for a sealed verdict, the right of the parties to poll the jury is not affected by an agreement that the jury may seal their verdict.

After a verdict is recorded, neither party has a right to poll the jury.

When the record shows that the verdict was recorded before the motion to poll the jury was made, affidavits are not admissible to *contradict* the record.

This action was brought in the court of common pleas, Ramsey county, resulting in a verdict for plaintiffs. Defendant moved for a new trial, which was denied and he appeals to this court. The cause of action, and the exceptions taken by defendant upon the trial in the court below, are sufficiently stated in the opinion of the court, except the one taken upon the rendering of the verdict, as follows:

The jury were directed to bring in a sealed verdict, with the consent of counsel of both parties. On opening the verdict, it was found to be informal, and the jury were directed to correct it, which was done, when the following proceedings, taken from the case as settled in the paper book, were had.

"And thereupon the jury being called by the clerk, the clerk said to the jury:

"Gentlemen of the jury, is this your verdict? And then read distinctly the aforesaid writing to the jury, and in response the foreman of said jury and other members, bowed their assent thereto, and no member of the jury said nay, or in any wise objected or dissented to the same. And thereupon the said clerk requested the jury to hearken to their verdict as it was recorded, and thereupon read to said jury distinctly the aforesaid verdict, and then repeated to them that this is your verdict, and so you all say. And thereupon the foreman of said jury and other members thereof bowed in response, and no member of said jury in any way signified any objection or dissent thereto. And there-

Steele et al. v. Etheridge.

upon the defendant requested that the jury be polled, which was ordered and the clerk, calling each juror by name, asked if this was. his verdict, and each of said jurors answered in the affirmative except Peter Schneider, who answered that it was not his verdict: And thereupon. the defendant requested that the jury be sent out again to deliberate upon their verdict, but the court denied said motion, and ordered said verdict to be received, as the verdict of the jury, and thereupon discharged the jury from said cause, to which orders and rulings, and each of them, the defendant duly excepted. " Upon the motion for a new trial, the defendant read several affidavits, all stating substantially, that the request of said defendant that said jury should be polled, was made, and said jury was polled, and the dissent of said Schneider, and the statement by him that it was not his verdict, made in open court, before the verdict had been actually entered, or recorded in the minutes of said court.

These affidavits are printed in the paper book, but are not embraced in the case as settled and signed by the judge of the court below.

Lampreys, for Appellant.

Allis, Gilfillan & Williams, for Respondents.

*By the Court*—McMillan, J.—The plaintiffs in their complaint, after averring their partnership, alleged that at divers times between the 16th of September, 1863, and the 18th of October, 1863, at Jamestown, N. Y., they sold and delivered to the defendant, divers goods, wares and merchandise at divers prices, such prices amounting in all to one thousand and sixty dollars, which sum defendant in consideration thereof, agreed to pay plaintiffs, and allege certain payments thereon by the defendant. And for a

further cause of action, aver the sale and delivery to the defendant, of divers other goods, wares and merchandise at divers prices, amounting in all to twenty-five dollars, which in consideration thereof, defendant promised to pay; allege breach and demand judgment.

The answer of defendant puts in issue the allegations of the complaint, and sets up an agreement between the plaintiffs and defendant, made about Feb. 23d, 1863, by which the defendant became and was during all the time mentioned in the complaint, the general and exclusive agent of the plaintiffs for the care and sale in the state of Minnesota of wood mills made by said firm, and by which the plaintiffs agreed to furnish, ship and deliver to him, at and from Erie, Pennsylvania, their wood mills, all entire, complete and in working order, with all the parts and appurtenances thereof, as many as the defendant should order, and as soon as the lake should open in the year 1863, which actually was the 15th of May, 1863 ; and by which it was agreed, that the defendant should receive the same as such agent of said firm, and should pay them therefor after said wood mills were all sold by him for them as such agent, and not before, $55 each, for their iron post wood mills, and for their wood post mills, $45 each.

The answer further states, that on the 3d of March, 1863, the defendant as such agent, ordered from said firm, twenty mills, ten of each of the kinds aforesaid. That plaintiffs actually sent fifteen of the iron post and five of the wood post mills, but did not deliver them at the time provided, nor till Nov. 5th, 1863, and never furnished them entire, complete and in working order, but neglected to furnish ten of the saws belonging to and forming part thereof; that defendant was compelled to and did furnish from Chicago, Illinois, the other saws therefor, to make said mills com-

Steele et al. v. Etheridge.

plete as to said saws; and to pay for such saws and the freight thereon $10.75 each, in all $107.50, and by reason of the neglect of plaintiffs to deliver the mills before Nov. 5th, 1863, the same did not and could not arrive at defendant's place of business till January, 1864, and long after the close of navigation on the lakes and rivers, whereby defendant was compelled to pay, and did pay additional freight; $200 more than if they had been delivered in accordance with the contract, and was compelled to go to Chicago to look after said mills, and put to great trouble and expense, and paid out in looking up and caring for the same, and suffered damages by reason of such neglect, more than $120; and by the failure of said firm to perform the contract, and the facts set forth in the complaint, the defendant lost and was deprived of the sale of the mills in 1863, &c., and thereby suffered damages in the sum of more than $700, which sums amounting in all to $1127.50, defendant sets up as a counter claim.

The answer sets up further, as a counter claim, the sum of $150, paid by defendant for castings which were defective, and portions of such machines which were wanting, in order to put the mills in proper order, and |make them salable, for the use and benefit of the said firm.

The reply puts in issue all the new matter in the answer.

The cause was tried by a jury and resulted in a verdict for plaintiffs of $1275.75. The first point made by the appellant is, that the court below erred in overruling the defendant's objections to the answer of the witness, Adam J. Steele, to the third and fourth interrogatories put to him, and in receiving the answers contained in the deposition of said witness in evidence. Proof that these goods were *sold* to the defendant was vital to the plaintiffs' case. In the answer to the third interrogatory the witness states, that the

plaintiffs "did sell and deliver" the goods to the defendant; and in the last clause of the answer to the fourth interrogatory, the witness states "the said mills were sold to defendant, and not shipped to him as the agent of Steele, Sprague & Co." There can be no doubt that the witness intended to testify to and establish by his testimony the fact of the sale of these goods, and that this is a statement as of his own knowledge. In answer to the sixth direct interrogatory of the plaintiffs, which was the general one whether the witness knew any other matter or thing relating to the issue in the cause, the witness stated among other things: "Also the said Steele, Sprague & Co., received letters from defendant pertaining to said purchase and shipment, which were in my possession and sent to plaintiffs' attorneys about a year ago, and they are all the letters received from defendant to my knowledge."

In answer to the first and second cross interrogatories to this action, it appears that he never saw the defendant Etheridge, at any time or place. In answer to the fourth cross interrogatory he says, "I sold and delivered to said defendant, the goods, wares and merchandize mentioned in the foregoing interrogatories, in the year 1863 and 1864; I did the shipping personally; I do not testify from hearsay in answering the above direct interrogatories, or any of them, except it be the purchase and directions for shipment were by letter or letters, to said Steele, Sprague & Co., from defendant, and the same letters mentioned in the last direct interrogatory."

We think the fair construction of the portion of the answer to the fourth cross interrogatory above quoted, taken in connection with the portion of the answer to the sixth direct interrogatory above quoted, is that the purchase and directions for shipment of the goods were made by letters

Steele et al. v. Etheridge.

from defendant to the plaintiffs, which, *prima facie*, were in their possession; and the testimony in the case shows that this was the fact.

The letters, therefore, were, in the first instance, the only competent evidence of the sale of the goods, and the testimony of the witness was incompetent to establish the fact.

Assuming that all the letters were put in evidence, subsequently, but a small portion of them were offered by the plaintiffs, and throughout the trial the plaintiffs proceeded upon the theory of proving the sale by oral evidence, and upon this theory, it seems, the case was submitted to the jury.

We do not feel called upon, under such circumstances, to examine the written evidence to ascertain whether the letters established a contract of sale or of agency. It is sufficient that the only competent proof of the contract was the letters; and that oral evidence upon the subject was permitted to go to the jury for their consideration, which, at least, we are not able to say was without influence upon the jury. Although the objection to the third interrogatory may be too general, in embracing the whole of the answer, a portion of which was competent testimony, the objection to the fourth interrogatory is specific, and limited to that portion of the answer which refers to a sale of the mills to the defendant. This objection should have been sustained and the testimony excluded, and the error in receiving it is ground for a new trial.

In the course of the defense, the defendant Etheridge having been sworn as a witness, and having identified certain letters which were introduced in evidence, and being still upon the stand, the defendant offered to prove by the witness in connection with correspondence between the plaintiffs and defendant:

1. The allegations in the answer in regard to the contract between plaintiffs and defendant, as therein alleged.

2. The allegations in the answer, and each of the same, relating to the damages sustained by said defendant, under such contract, by reason of the breach of such contract on the part of the plaintiffs in not shipping said mills at the time and as agreed in said contract, set up as a counter claim and recoupment in said answer, as therein alleged.

3. The allegations of the answer relating to damages sustained by said defendant, under said contract, by reason of the breach of said contract on the part of the plaintiffs in not shipping said mills all complete as agreed in said contract, set up as a counter claim in said answer.

4. Each and every allegation of the answer relating to the damages of said defendant, by reason of the breaches of said contract on the part of said plaintiffs, set up in said answer as a counter claim and recoupment, and each and every item of the same as therein alleged : which offers were made separately, and the plaintiffs objected to the same, and each of them, as incompetent and immaterial. The court sustained the objections, and refused to receive said testimony ; to which ruling the defendant excepted.

Before the offers had been made, the defendant had testified that the agreement in regard to the mills had been made by letter, and had offered in evidence all the letters. So far, therefore, as the first of the offers enumerated above and rejected, is concerned, it must be regarded as an offer to prove the contract as a basis for the counter-claim set up in the answer, and not as a mere defense to the action. The correctness of the rulings as to all these offers, depends on the question whether the matter is properly the subject of a counter claim to the plaintiffs' cause of action, and whether the answer contains facts sufficient to constitute a counterclaim.

The answer, we think, shows clearly that the mills and property in the complaint are those embraced in the answer; that they were not received under an agreement of sale, but were received under a contract of agency; the transaction between the parties, and the property which was the subject of the transaction between them is the same. The plaintiffs claim that by the terms of the agreement under which the delivery of the mills and property took place, the transaction was a sale by the plaintiffs to the defendant; that the legal effect of it was to pass the title out of plaintiffs, to the defendant, and create an obligation on the part of the defendant to pay the plaintiffs the price agreed on.

The defendant claims, that the delivery of the property is the same relied on by plaintiffs, but that by the terms of the agreement under which it was made, it was not a sale, but was a contract of agency, and sets forth the terms of it, and alleges certain breaches by the plaintiffs of certain conditions obligatory upon them, whereby he has suffered damages which are set forth. The transaction is certainly the same in fact; the rights and obligations arising out of the transaction are in dispute. We think, under our statute, the subject matter of the answer, so far as the nature or character of it is concerned, is a proper ground of counter claim. *Koempel vs. Shaw*, 13 *Minn.* 488; *Folsom vs. Carli*, 6 *Minn.* 420; *Thompson vs. Kessel*, 30 *N. Y.* 383. But the agreement of agency, as stated in the answer, is that the defendant was to pay for the mills "after they were all sold by him, for them, as such agent, *and not before*, $55 each, for their iron post wood mills, and for their wood post mills, $45 each;" and the answer distinctly avers that the defendant has fully performed his part of the contract, and "that one of said wood mills still remains and is unsold, and on hand, and the property of said firm, without any fault of

defendant." The nature of a counter claim would seem to render necessary the admission by defendant of a claim against him in favor of the plaintiffs arising out of *the contract*, or *the transaction*, as the case may require, which is the *cause of action* or the *ground of* the plaintiffs' claim set forth in the complaint. *Mason & Craig vs. Heyward*, 3 *Minn.* 182; *Whalon et al. vs. Aldrich*, 8 *Minn.* 348; *Koempel vs. Shaw*, 13 *Minn.* 488; *Morrison et al. vs. Lovejoy et al.* 6 *Minn.* 319. In the case at bar, the defendant, as we have already remarked, shows that the transaction in fact on which he relies, is the same as that upon which the plaintiffs rely, but by the terms of the contract as set forth by the defendant, there is no obligation on the part of the defendant by which any claim arises against him, in favor of the plaintiffs, for no payment was to be made until all the mills were sold. If it be said that the defendant admits the receipt of all the mills, and the sale of all but one, and by setting up the counter claim waives the right to object that the plaintiffs cannot recover the amount admitted, the reply is, that under the contract as stated in the answer, the defendant is under no obligation to account for or pay over to the plaintiffs the proceeds of the sale of the mills, or any part thereof, until after the sale of all the mills; nor in the absence of default on the part of the defendant, or other facts determining his rights to the possession of the mills unsold, is he under any obligations to deliver such unsold mills to the plaintiffs. Under such circumstances, in the absence of any offer to account for the mills sold, and to deliver the unsold mill, no such waiver can be inferred. While, therefore, the defendant admits the receipt of the plaintiffs' property under the contract, he denies any obligation on his part to account to the plaintiffs therefor, and still sets up *as a counter claim*, damages alleged to have been

Steele et al. v. Etheridge.

suffered by reason of the plaintiffs' failure to perform their contract according to its terms.

It is manifest, under this state of the pleadings, that no accounting can be had by which the amount of any claim of the plaintiffs can be ascertained, against which the damages of the defendant can be set off, and the balance, if any, to which either party is entitled, ascertained. The proofs proposed, therefore, were properly rejected.

The third point raised by the defendant cannot be sustained. The record shows, that the verdict of the jury was recorded before the motion to poll the jury was made.

We cannot go behind the record. The affidavits were not competent, under the circumstances, for the purpose for which they were offered. In a proper case for a sealed verdict, the rights of the parties to poll the jury are not affected by an agreement that the jury may seal their verdict; but where the verdict is recorded, the right to poll the jury is gone.

The polling of the jury after the verdict was recorded, was of no effect, and although upon such polling one of the jurors expressed his dissent from the verdict as previously rendered and recorded, it must be disregarded. On the grounds above stated, however, the order denying a new trial is reversed.