## J. M. PAINE, *et al.*

### *vs.*

## GEORGE W. SHERWOOD, *et al.*

A *memorandum* containing several items of account was handed to a witness upon the stand, who testified that he was able "to state some items without looking at the memorandum." It also appeared that the *memorandum* was not an original document, and the absence of the original was not accounted for. *Held*, that, upon this state of facts, the *memorandum* was improperly permitted to be read in evidence.

*Mason & Craig v. Heyward,* 3 *Minn.* 182, followed and applied to this case.

The damages, which one party to a contract ought to recover in respect of a breach of it by the other, are such as either arise naturally, that is, in the usual course of things, from the breach itself, or such as may reasonably be supposed to have been contemplated by the parties, when making the contract, as the probable result of the breach.

After verdict for the plaintiffs in the court of common pleas for Ramsey county the defendants moved upon a bill of exceptions for a new trial, and they appeal to this court from the order denying such motion.

The substance of the pleadings, and the exceptions taken at the trial, are sufficiently stated in the opinion.

BRISBIN & PALMER, for Appellants.

H. J. HORN, for Respondents.

*By the Court.*—BERRY, J.—This is an action for lumber and

other goods sold and delivered, and for services rendered, by plaintiffs to defendants.

The answer sets up that the lumber, for which plaintiffs seek to recover, was furnished under a written contract entered into between the parties, in the words and figures following, to-wit: " St. Paul, December 2d, 1870. We agree to furnish " Sherwood & Sewall with lumber for three bridges on the " Northern Pacific Railroad, at fourteen dollars per M, to be " delivered either on the cars or at some convenient place for " framing near our mill ; said lumber to be white pine, of good " quality, fully edged, and absolutely free from wane and per-" fectly sound. To be sawed of full size and length, but the " size not to exceed the required dimensions more than enough " to smooth it, and if any of said timber shall be rejected by " said Sherwood & Sewall, or by the engineer of said railroad, " as not complying with the above specification, we agree to " replace such rejected pieces without cost to said Sherwood " & Sewall. The timber on the different bills to be kept sepa-" rate and the whole delivered, if required, in five weeks, and " one span in three weeks, payable within ten days after deliv-" ery. December 3d, 1870.

" J. M. PAINE & Co.
" SHERWOOD & SEWALL."

As one defense the answer proceeds to allege that defendants " required of said plaintiffs the delivery of the whole timber for said three bridges in five weeks from said December 3d, 1870, and repeatedly urged such delivery during said month of December, 1870; but that said plaintiffs did not deliver all said timber, required as aforesaid, within the time provided in said contract, but neglected and refused so to do, and have never delivered the same, or fulfilled said contract on their part, (to the damage of said defendants, as hereinafter

Paine et al. v. Sherwood et al.

stated,) and are not entitled · * * * to recover the price or value of said timber, or any part thereof."

For a second defense the answer alleges that, prior to entering into the contract aforesaid, defendants had contracted with the Northwestern Construction Company to construct three bridges, mentioned in the contract aforesaid, and " to have said bridges built and fully completed on or before March 1st, 1871, all which was known to said plaintiffs at and prior to the making of said contract with defendants ; and it was essential, and so known to plaintiffs, that said timber should be furnished to defendants at and within the time referred to in their said contract with plaintiffs, in order that defendants might be able to complete their contract with said construction company ;" that plaintiffs, although often requested so to do, furnished less than half of the quantity of lumber necessary for said bridges, and did not furnish the amount so furnished within the time provided by the contract aforesaid ; but that a great part of such amount was not furnished until on or about March 1st, 1871. " That in consequence of the failure of the plaintiffs to perform their said contract * * defendants were compelled to and did employ a great number of men to go into the woods," and cut, hew and square by hand, and haul the timber necessary for said bridges, the cost of which cutting, hewing and squaring was $251. Defendants call this their first counter-claim.

That subsequently, and in March, 1871, plaintiffs having refused and neglected to furnish defendants with other timber necessary for said bridges, defendants " were compelled to and did employ men and teams to cut, hew, whipsaw and haul " such timber, and in so doing necessarily expended $1,181.80. This constitutes what defendants call their second counter-claim.

That a large number of pieces of timber furnished by said

plaintiffs were rejected by the engineer referred to in the contract aforesaid, and were ordered to be taken out of one of the bridges, and were taken out by the defendants as rejected pieces, at an expense of $45. This is defendants' third counter-claim.

Defendants' fourth counter-claim, which was allowed in the verdict under the instructions of the court, was for the alleged loss of the time of their employees, in consequence, as their answer claims, of plaintiffs' failure to perform their contract aforesaid.

The reply admits that a portion of the lumber sued for was furnished under the contract set up in the answer, and alleges that defendants never required the whole of the lumber for the bridges within the five weeks, or otherwise, or for one span within three weeks, or otherwise, or furnished the plaintiffs with bills, or the requisite particulars or information, to enable them to furnish the whole amount of lumber for said bridges; and further alleges that plaintiffs have always been willing and ready to comply with the contract aforesaid. It is also averred in the reply that, on or about March 1st, 1871, defendants agreed with plaintiffs that, in consideration that plaintiffs would run their mill exclusively for sawing lumber for defendants for two or three days, or thereabouts, as defendants might require, the defendants would not require plaintiffs to furnish any more lumber under the contract aforesaid, and would release plaintiffs from any other or further performance thereof; and said plaintiffs, in consideration thereof, run their mill exclusively for sawing lumber for said defendants for the time by them required, and defendants released plaintiffs from all other and further performance of the contract aforesaid, and finished said bridges without requiring of plaintiffs any lumber therefor.

The reply denies all knowledge as to whether defendants

Paine et al. v. Sherwood et al.

had contracted with the Northwestern Construction Company, as stated in their answer, or otherwise, and also denies generally the matters set up in the answer by way of counterclaim, as aforesaid.

Defendants' first point upon their brief is that " the court erred in allowing oral testimony until the written contract had been put in evidence." As the oral testimony objected to related exclusively to items of lumber, etc., not embraced in the written contract, we see no reason why the objection should have been sustained.

J. M. Paine, one of the plaintiffs, having testified that plaintiffs had sawed some 10,000 to 15,000 feet of common lumber for defendants, outside of said written contract, but that he could not recollect the exact items, produced a memorandum, or paper, being a bill of parcels in ordinary form, containing some twenty items of lumber, etc., with dates, quantities and prices, as usual in such cases. The witness testified concerning the same as follows: " I have memorandum made under my direction about March 1st, 1871, immediately after the transaction. The bill was made out for lumber we furnished. The object of making out the memorandum was to show our account; it was made by our clerk under my direction. I can state some items without looking at memorandum. The memorandum was made out under my observation and was correct at the time. I recollect furnishing at one time 2,000 feet of plank. They were furnished and charged at the price we were selling at, $13."

Plaintiffs' counsel requested that the witness might be permitted to inspect the memorandum, for the purpose of refreshing his memory. Defendants objected to the use of the memorandum by the witness to refresh his recollection, or to read from the same the items, or any of them, therein appearing " as no foundation had been laid therefor, and as hearsay." The

objection was overruled, and the witness was permitted to read, and did read, from the memorandum to the jury all the items therein contained, except the item for lumber for the bridges aforesaid. Defendants insist that this was wrong because the memorandum was not such as could be used by the witness for the purpose of refreshing his memory, or of reading its contents to the jury, and because no proper foundation was laid to authorize its use.

Inasmuch as the case comes up here upon a bill of exceptions, (which does not purport to contain all the evidence received below,) it does not appear that a sufficient foundation was not laid for the use of the memorandum for the purpose of refreshing the memory of the witness. For this purpose it was not necessary that the memorandum should be an original document, nor that it should have been made by the witness. 1 *Gr. Ev.* § 436.

But we are unable to discover any ground upon which the court was justified in permitting it to be *read to the jury.* In the first place, the witness testifies that he is able " to state some items without looking at memorandum," so that, as to those items, there would appear to be no occasion whatever for allowing the memorandum, (even if it were otherwise unobjectionable,) to be read to the jury. In the second place, the fair inference from the examination, in chief, independent of the cross-examination, is that the memorandum was not an original document. If so, it was certainly not admissible until the absence of the original was satisfactorily accounted for by proof of the inability of plaintiffs to produce it on account of its loss, destruction, or otherwise. And although as to this matter it is true, as before, that it does not appear what foundation was laid for the reading of the memorandum, yet when it is considered that it was *offered* solely for the purpose of *refreshing* the memory of the witness, we cannot be expected

Paine et al. v. Sherwood et al.

to presume that the witness falsified himself by giving any testimony, (inconsistent with the tenor of his cross-examination,) which would tend to show that the account books, from which the original bills of which the memorandum was a copy, appear to have been compiled, were lost or destroyed, or that, for any reason, it was out of his power to produce them. We think, therefore, that the memorandum must be regarded as improperly read to the jury. And as it is plain that, if received, (as it manifestly was,) as evidence of the facts therein stated, it could hardly fail to influence the jury unfavorably to defendants, its admission necessarily leads to a new trial of the case.

*After* the memorandum had been received and read, it appeared upon cross-examination that the memorandum was a copy of original bills, which bills were made out from the account books of the plaintiffs. The witness, who had testified in reference to the memorandum, and who had been permitted to use and read the same, testified from personal observation and knowledge as to several items noticed in the memorandum, such as the furnishing and delivery of different quantities of lumber, and the purposes for which the same was used. What other testimony he may have given does not appear for the reason before given.

After the testimony on both sides had been concluded, (several witnesses having been examined by both parties,) defendants' counsel moved the court to strike out that portion of the testimony of J. M. Paine, (the plaintiff and witness before mentioned,) "referring to items not claimed to have been furnished under the written contract, on the ground that the same is incompetent, immaterial and confessedly hearsay."

The motion was very properly denied. Some of the testimony appearing in the bill of exceptions, which the court

was requested to strike out, was certainly not objectionable on either of the grounds upon which the motion was based.

In reference to any testimony, which does not appear in the bill of exceptions, it is of course impossible for this court to say that the court below erred in refusing to strike it out. The motion, was, then, altogether too broad, and for this reason was well denied.

We may add that, even if the motion had been clear of this objection, we should be extremely reluctant to disturb the action of the court below, when we consider the *time*, and stage of the trial, at which defendant's motion was made.

In regard to defendants' other exceptions, (which are quite numerous,) it will not be necessary to speak of them in detail, as they may be sufficiently considered in two or three groups.

One class of these exceptions relates to the right of the plaintiffs to recover for lumber furnished under the written contract aforesaid, without showing full performance on their part, or rescission of the contract, or waiver of performance by defendants.

The answer of defendants, as we have seen, sets up several counter-claims for damages arising out of alleged breaches by plaintiffs of the written contract. One of these counter-claims appears to have been allowed by the jury under the instructions of the court. The other three counter-claims were not submitted to the jury, the court below excluding evidence in regard to them for reasons, which, as we shall presently have occasion to show, were sufficient. The case, then, would appear to fall within the rule originally laid down in this court in *Mason & Craig vs. Heyward,* 3 *Minn.* 182, which is properly stated in the head-note of that case as follows, viz. : " A de- " fendant, by pleading a counter-claim for damages for a " breach of a contract, which is the subject of the action, admits " a claim against him on the part of the plaintiffs, which he

" avoids by his counter-claim.   And by so pleading he tenders
" an issue upon all the equities existing between him and the
" plaintiffs, arising out of the contract, and must abide by
" that issue, whether he be benefited or prejudiced thereby.
" He cannot, after an examination of all the equities under
" such an issue, fall back and claim to defeat any recovery
" against him, on a plea of non-performance of the contract."
The rule thus laid down is followed in *Whalon vs. Aldrich*,
8 *Minn.* 346 ; in *Koempel vs. Shaw*, 13 *Minn.* 492 ; and in
*Steele vs. Etheridge*, 15 *Minn.* 510.

Defendants' counsel urges that this rule was not properly
applicable to this case, because the rule rests upon an *exam-
ination of all the equities*, and such examination was not per-
mitted in this case.

If defendants had any equities, which they did not plead,
they must be taken to have waived them, and the case would
stand as if no such equities existed.

If, as will appear in this case, the equities, which they at-
tempted to plead, were, with one exception, withheld from the
consideration of the jury, either because the matters set up
were not equities, or because they were not proved, certainly
it cannot be said that an examination of the equities was not
permitted.

Another, and perhaps the most important class of excep-
tions taken by defendants relates to the measure of damages.
In their second defense defendants (as before stated,) allege
that their contract with the Northwestern Construction Com-
pany, by the terms of which the bridges aforesaid were to be
completed *on or before March 1st*, 1871, was well known to
plaintiffs *at and prior to the making* of the contract between
plaintiffs and defendants, and that it was essential, and so
known to plaintiffs, that the timber should be furnished to de-
fendants at and within the time referred to in the contract with

plaintiffs, *in order that said defendants might be able to complete their said contract with the construction company;* that, in consequence of plaintiffs' failure to perform their contract, defendants were compelled to procure timber in the other ways set forth at length in the answer, at the expense therein stated.

Defendants offered to show that, at the time when they made the contract with the plaintiffs, they had made the contract above indicated with the construction company, and that " that fact *was communicated to plaintiffs at or about the time* the contract (with plaintiffs) was made."

Defendants claim that, under the state of facts thus offered to be shown, they are entitled to recover as damages such sum as, in consequence of plaintiffs' failure to perform their contract, they, the defendants, were compelled to pay and did pay, (in procuring the lumber which plaintiffs had failed to supply,) in order to enable them to fulfill their contract with the construction company. It was with reference to this theory, as we understand it, that most of the offers of testimony were made, to the rejection of which, by the court below, exceptions were taken by defendants.

The rule is, that " the damages, which one party to a contract ought to receive in respect of a breach of it by the other, are such as either arise naturally, that is, in the usual course of things, from the breach itself, or such as may reasonably be supposed to have been contemplated by the parties, when making the contract, as the probable result of the breach." *Sedgwick on Damages* 77 ; *Hadley vs. Bayerdale,* 9 *Exch.* 341 ; *Smeed vs. Foord,* 1 *Ellis & Ellis,* (102 *E. C. L.*) 602 ; *Portman vs. Middleton,* 4 *Com. Bench, N. S..* (93 *E. C. L.,*) 322 ; *Griffin vs. Colver,* 16 *N. Y.* 489 ; *Passinger vs. Thorburn,* 34 *N. Y.* 634 ; *Cassidy vs. Le Fevre,* 45 *N. Y.* 562 ; see also *Baldwin vs Blanchard,* 15 *Minn.* 489. The latter branch of the rule is stated somewhat more at large in *Baldwin vs. the U. S. Tele-*

*graph Co.* 45 *N. Y.* 750, as follows : " Whenever special or extraordinary damages, such as would not naturally or ordinarily follow a breach, have been awarded for the non-performance of contracts, whether for the sale or carriage of goods, or for the delivery of messages by telegraph, it has been for the reason that the contracts have been made with reference to peculiar circumstances, known to both, and the particular loss has been in contemplation of both, at the time of making the contract, as a contingency that might follow the non-performance. In other words, the damages given by way of indemnity have been the natural and necessary consequences of the breach of contract in the minds of the parties, interpreting the contract in the light of the circumstances under which, and the knowledge of the parties of the purposes for which it was made, and when a special purpose is intended by one party, but is not known to the other, such special purpose will not be taken into account in the assessment of damages for the breach. The damages in such cases will be limited to those resulting from the ordinary and obvious purpose of the contract."

. Tried by this rule we think there can be no doubt that defendants' offers of testimony above referred to were rightly rejected.

Defendants undertake to hold plaintiffs responsible for the expense to which defendants were put in order to enable them to fulfill their contract with the construction company to complete the bridges aforesaid by March 1st.

Now unless plaintiffs, at the time when they entered into their contract with defendants, were *aware* that defendants had made the contract above mentioned with the construction company, and that, by the terms of the latter the bridges were to be completed by March 1st, it cannot be said that the damages ensuing to defendants from plaintiffs' failure to perform,

in consequence of defendants' obligations to the construction company, were such as would "arise naturally, that is, in the usual course of things," from plaintiffs' breach of contract, nor "such as may reasonably be supposed to have been contemplated by the parties, when making the contract, as the possible result of the breach." But defendants' offer was to prove, not, in the language of their answer, that *at or prior* to the time of making the contract between plaintiffs and defendants, but that *at or about* such time the existence and nature of defendants' contract with the construction company was communicated to plaintiffs. Without considering any other objections raised to the defendants' theory and position upon this branch of the case, we think that upon these grounds they must be held to be untenable.

In regard to the third counter-claim, it need only be said that the contract binds the plaintiffs to "*replace*" rejected timber, not to pay defendants for *taking it out* of the bridges.

This disposes of what we understand to be the principal matters insisted upon by defendants.

There are several minor points raised. Some of these, as, for instance, that there was no valid consideration for defendants' pretended waiver of performance by plaintiffs, and the point made in reference to plaintiffs' running their mill *exclusively* for defendants for a certain length of time, are disposed of by the fact that the case is brought here upon a bill of exceptions, which does not pretend to report all the evidence received below.

Other of these minor points are disposed of by the consideration that they relate to excluded questions addressed to witnesses, or to instructions refused, in which facts not proved were assumed.

Others still are disposed of by what has already been said upon the principal questions in the case.

In regard to the alleged error of the court in charging the jury, "that the burthen of proving a breach of the written contract is upon defendants," it is to be observed that the plaintiffs' recovery and right of recovery in this action do not rest upon their full performance of the written contract, and therefore it was not necessary for them to establish such full performance, and thus to negative a breach. On the other hand, defendants had set up certain breaches of plaintiffs' contract *by way of counter-claim*, and had claimed *damages* for the same. In view of these facts no comment is required to show that the court below committed no error in the instruction complained of.

But on account of the error before mentioned, in regard to the memorandum, the order denying a new trial is reversed.