BRUNO BEAUPRÉ & another *vs.* PACIFIC & ATLANTIC TELE-
GRAPH COMPANY.

Dec. 16, 1874.

**Measure of Damages—Negligence of Telegraph Co.**—The plaintiffs, merchants in St. Paul, wrote to R., a wholesale dealer in pork at Dubuque, "Have you any more northwestern mess pork, or prime mess? also extra mess; telegraph price on receipt of this." R. telegraphed in reply: "Letter received. No light mess here. Extra mess twenty-eight seventy-five, ($28.75.)" On July 15, the plaintiffs, having received R.'s dispatch, delivered to the defendant at St. Paul, at about six o'clock, P. M., the following message addressed to R., with a request to forward it without delay: "Dispatch received. Will take two hundred extra mess, price named." The defendant undertook to forward the message, having no other information of its nature or object than was afforded by the message itself, but negligently delayed sending it until July 19, and did not inform the plaintiffs of the delay. Between the 16th and the 19th July, the market price of pork advanced, and the plaintiffs were compelled to supply themselves at an advanced price. *Held,* that the plaintiffs were entitled to recover the price paid for the message, but not for any loss resulting from the advance in the price of pork,—the damages claimed on this account not arising naturally from defendant's breach of contract, and not being such as may reasonably be supposed to have been contemplated by the parties, when making the contract, as the probable result of the breach.

Plaintiffs brought this action in the court of common pleas for Ramsey county to recover the sum of $250, with interest from July 15, 1870, being the damages alleged to have been sustained by them in consequence of the defendant's negligent delay in transmitting a message. The action was referred to R. B. Galusha, Esq., who found the following facts, which were alleged in the complaint: The plaintiffs, at all the times hereinafter mentioned were, and now are, partners under the firm name of Beaupré & Kelly, and the defendant was and is a corporation, etc., engaged in the business of transmitting messages by electric telegraph from and to different places in the United States, and particularly the city of St. Paul in this state and Dubuque in the state of Iowa, for hire and reward. On July 15, 1870, and for more than one month thereafter, one William Ryan was a dealer in pork at wholesale at Dubuque. On July 12, 1870, the plaintiffs sent by mail to Ryan the following letter, viz:

"St. Paul, July 12, 1870. Wm. Ryan: Dear Sir: Have you any more northwestern mess pork or prime mess, also extra mess? Telegraph price on receipt of this;" which letter was received, on or prior to, July 15, by Ryan, who on the last named day sent the following message by telegraph to the plaintiffs: "Dubuque, July 15, 1870, Beaupre & Kelly: Letter received. No light mess here. Extra mess twenty-eight seventy-five (28.75)." This dispatch was received by the plaintiffs on the day of its date, and on the same day (July 15) at about six o'clock in the afternoon, the plaintiff delivered to the defendant, at its office in St. Paul, the following message, directed to Ryan: "July 15, 1870. William Ryan, Dubuque: Dispatch received. Will take two hundred extra mess, price named. Beaupré & Kelly:" which message was marked by the plaintiffs, and intended to be forwarded as a night message. The defendant was informed of the contents and purport of this message, and was requested to forward it without delay. The plaintiffs paid to the defendant the sum of twenty-five cents, in consideration whereof the defendant promised and undertook to forward the message to Ryan, as requested by the plaintiffs. The defendant made no attempt to transmit the message to Ryan, by its own or any other telegraph line, until the morning of July 16, and did not inform plaintiffs of such delay. On the evening of July 15, a rain and wind storm, accompanied with heavy lightning, arose at St. Paul at half past seven p. m., lasting until after ten o'clock, making it impossible to transmit the message by the defendant's line after half past seven p. m. The defendant did not transmit and deliver the message to Ryan at Dubuque until July 19, 1870.

The market price of extra mess pork on July 15, was $28.75 per barrel, but from the morning of July 16 to July 19, 1870, the market price advanced one dollar and twenty-five cents per barrel, and on the receipt of the message, (on July 19,) Ryan refused to furnish plaintiffs said two hundred barrels of extra mess pork at the price of $28.75 per

barrel, or for less than $30.00 per barrel.  The plaintiffs required the pork in carrying on their business, and were compelled to, and did, pay for said two hundred barrels of pork $30.00 per barrel, which was the lowest market price for such pork on and after July 19, 1870, and up to the time the plaintiffs purchased the same, plaintiffs having relied on their dispatch to obtain such pork.

It is the custom of defendant and other telegraph companies to send " night dispatches," so called, after the hour of six o'clock P. M., and during the evening until the close of business hours of each night, at ten o'clock P. M. ; and it is the custom to deliver such night dispatches on the following morning ; but the plaintiffs were not informed of this custom.  The price for night dispatches or messages is one half the price charged for sending " day messages," so called.

All other allegations in the complaint, the referee found not proved.

As conclusions of law, the referee found that the defendant was negligent in not sending the plaintiffs' message to Ryan on July 15 ; that there was reasonable time to have forwarded or transmitted it prior to the storm before mentioned ; and that plaintiffs had been damaged by such negligent conduct of the defendant in the amount of twenty-five cents, being the amount paid by plaintiffs to defendant for transmitting the message, for which sum, with disbursements, he ordered judgment.

On the coming in of the referee's report, the defendant moved for judgment in its favor, and the plaintiffs moved for judgment for the amount claimed in the complaint.  The latter motion was granted by the court, *Hall*, J., presiding, and judgment was entered accordingly, from which the defendant appeals.

*I. V. D. Heard*, for appellant.

*Davis & O'Brien*, for respondents, cited Sedgwick on Damages, 97, 98 ; *U. S. Tel. Co.* v. *Wenger*, 55 Penn. St. 262 ; *Hadley* v. *Baxendale*, 9 Exch. 341 ; *Alden* v. *Keighley*,

15 Exch. 116; *Landsberger* v. *Magnetic Tel. Co.*, 32 Barb. 530; *Griffin* v. *Colver*, 16 N. Y. 489; *Rittenhouse* v. *Independent Tel. Co.*, 44 N. Y. 263; *Graham* v. *W. U. Tel. Co* 10 Am. Law Reg. (N. S.) 319; Allen's Tel. Cas. 578; *Candee* v. *W. U. Tel. Co.*, Am. Law Rev. (July, 1873,) 763.

YOUNG, J. The plaintiffs' right to recover the damages allowed them by the court below, must be tried by the well established rule that "the damages which a party to a contract ought to recover in respect of a breach of it by the other, are such as arise naturally from the breach itself, or such as may reasonably be supposed to have been contemplated by the parties, when making the contract, as the probable result of the breach." *Hadley* v. *Baxendale*, 9 Exch. 341; *Squire* v. *W. U. Tel. Co.*, 98 Mass. 232; *True* v. *Internat. Tel. Co.*, 60 Maine, 9; *Paine* v. *Sherwood*, 19 Minn. 315, 324. The damages must, moreover, be certain, both in their nature, and in respect of the cause from which they proceed. They must not be the remote, but proximate, consequence of the breach of contract, and must not be speculative or contingent. *Griffin* v. *Colver*, 16 N. Y. 489, 495.

The plaintiffs, in their complaint, treat Ryan's dispatch as an offer to sell such quantity of pork as they might order, at the price therein named, and their own message as an acceptance of such offer, and an agreement on their part to take two hundred barrels at that price. If such were the character of these dispatches, then the plaintiffs' message, if seasonably delivered, would have effected a valid executory contract of sale, by which Ryan would be bound to furnish the pork contracted for, at the contract price; the case would then be similar to *Squire* v. *W. U. Tel. Co.*, and *True* v. *Internat. Tel. Co.*, (*supra*,) in each of which the dispatch negligently delayed by the company was, and on its face purported to be, an acceptance of an offer to sell specific merchandise, and if seasonably delivered, would have completed a sale by which the property in such merchandise would have passed at once to the plaintiff. In those

cases, it was held, consistently with the rules above stated, that the measure of damages should be the difference between the price the plaintiff agreed to pay by the delayed message, and the sum which the plaintiff, using due diligence, would have been compelled to pay, at the same place, in order to purchase the same quantity of similar goods. But neither Ryan's dispatch nor the plaintiffs' message will bear the construction put upon it in the complaint. The plaintiffs had written to Ryan, enquiring if he had any more pork of certain kinds, and requesting him to "telegraph price on receipt of this." Ryan accordingly telegraphed as follows: "Letter received. No light mess here. Extra mess twenty-eight seventy-five (28.75.)" Upon receipt of this dispatch, the plaintiffs sent this message, which the defendant neglected to deliver in due season: "Dispatch received. Will take two hundred extra mess, price named." Ryan's dispatch did not purport to be an offer to sell any quantity of pork whatever, nor was the plaintiffs' message an acceptance of any offer. The seasonable delivery of the plaintiffs' message to Ryan would not have effected any contract binding him to deliver to the plaintiffs two hundred barrels, at the price named. Ryan's dispatch was rather, (as seems to be admitted by the plaintiffs in their printed argument,) a quotation of the market price of pork, or perhaps, a statement of the price at which he held his own pork; and the plaintiffs' message was an offer to take two hundred barrels at the price named—a mere order for goods, which Ryan might accept or reject at his pleasure, and until his acceptance no contract would exist between the parties.

As the plaintiffs' message, seasonably delivered, would not of itself have effected any contract between themselves and Ryan, or secured to the former the pork needed by them at the price named, the plaintiffs' failure to make a contract with Ryan, and to obtain the pork, was not the direct and natural result of the delay of their message. It was therefore necessary for the plaintiffs, in order to connect their failure to obtain the pork ordered at $28.75 with

the defendant's negligence in transmitting their message, to aver and prove that they would have obtained the pork at that price, had their message been duly delivered. The complaint accordingly alleges that, by the defendant's negligence, "the plaintiffs were prevented from making, and did not and could not make, said contract with Ryan, and did not obtain said pork; that both said plaintiffs and said Ryan were willing and able to make and perform said contract, and would have done so, but for the aforesaid negligence and acts of the defendant." The facts alleged in the passage quoted are none of them expressly found by the referee, whose report, in addition to the special findings of fact, contains the following statement, clearly negativing these allegations of the complaint: "As to all other allegations of fact contained in the pleadings in said action, I find the same, (except as heretofore stated in this report,) not proven." This finding alone would be fatal to the plaintiffs' claim; for unless, upon the seasonable delivery of their message, they would have obtained, at $28.75, the pork which they were obliged afterwards to buy at $30 per barrel, is is difficult to see how they have sustained any loss whatever from the delay of the message. And certainly, any loss they may have suffered from the rise in pork was in no sense a consequence of the defendant's negligence. Since the performance of its contract by the defendant would not have enabled them to secure their pork at any less price than they afterwards paid for it, the defendant's breach of contract left them in no worse position than they would have occupied, had the contract been fully performed. There is nothing in the other findings of the referee from which it can fairly be inferred that the seasonable delivery of the message would have enabled the plaintiffs to obtain the pork required by them at any less price than $30 per barrel.

But even if we could presume from the referee's findings that the plaintiffs would have obtained the pork at $28.75, had their message not been delayed, and that, in consequence of the delay, they have suffered the damage claimed

by them, there would still be some difficulty in holding the defendant liable for those damages. It is alleged in the complaint "that when the plaintiffs delivered their message to the defendant, they informed the defendant of its purport, and of the object aforesaid proposed to be secured by them by its transmittal;" but on this point the referee has merely found that the "defendant was informed of the contents and purport of said message." Taken in connection with the statement in the report negativing the allegations not specifically found to be true, this is equivalent to a finding that the defendant had only such information of the nature and object of the message as was afforded by the message itself. The message purports to relate to some business transaction, the nature of which is not disclosed. It gives no intimation of the magnitude or importance of the business involved, or of the amount of damage that might result from a delay in transmitting it. The company might have known, from the tenor of the message, that it related to a purchase of goods, and was presumably of some value; but the message itself, "will take 200 extra mess, price named," would hardly have informed the defendant of the nature, quantity, price or value of the goods which the plaintiffs offered to take. The damage the plaintiffs might suffer from a rise in the market price of pork, if this message were not seasonably delivered, could hardly have entered into the contemplation of the defendant, at the time it received and undertook to transmit this message, as a probable consequence of the breach of its contract. *Stevenson* v. *Montreal Tel. Co.*, 16 Upper Canada Q. B. 530, Allen's Telegraph Cases, 71; *Kinghorne* v. *Montreal Tel. Co.*, 18 Upper Canada Q. B. 60, Allen's Tel. Cases 98; *U. S. Tel. Co.* v. *Gildersleve*, 29 Md. 232; *Baldwin* v. *U. S. Tel. Co.*, 45 N. Y. 744.

Whether in the present case, the information conveyed to the company by the message was sufficient to render it liable for any consequential damages the plaintiffs might have sustained from its delay, is a question we are not required to determine; but considering the magnitude of the dam-

ages which may result from mistake or delay in transmitting important messages, damages often out of all proportion to the price paid for transmission, it is simple justice to the company that it should not be held liable for such consequential damages, unless the character and object of the message appear upon its face, or the nature of the risk assumed by the company is made known to it by the sender.

The position taken by the plaintiffs' counsel that Ryan was the plaintiffs' broker, and that their message was an order to him to buy pork on their account, is inconsistent with the findings of the referee.   The cases arising upon the delay of messages sent by principals to their agents, attorneys, and brokers, ( *U. S. Tel. Co.* v. *Wenger*, 55 Penn. St. 262; *Parks* v. *Alta Cal. Tel. Co.*, 13 Cal. 422; *Bryant* v. *Am. Tel. Co.*, 1 Daly, 575,) are therefore not in point; and it is unnecessary to consider whether, in all of these cases, the facts, as stated in the report, warranted the conclusion reached by the court.

But while the plaintiffs are not entitled to consequential damages, the referee was clearly right in allowing them to recover the price of the message.   The message was delivered to the defendant on July 15, at 6 o'clock P. M., with the request to forward it immediately.   So far as appears from the referee's report, the defendant might have sent it forward at any time before the storm which arose at half-past seven; but no attempt was made to send it until the next morning, and the defendant did not transmit and deliver it until the 19th, and did not inform the plaintiffs of the delay.   Upon these facts, the referee was justified in holding, as matter of law, that the defendant was negligent; (*Derosia* v. *Winona & St. Peter R. Co.*, 18 Minn. 133; *Pinney* v. *First Div. St. P. & P. R. Co.*, 19 Minn. 251;) and the direct and natural result to the plaintiffs from this negligence was the loss of the money paid by them for the transmission of the message, and this sum they are entitled to recover.   Sedgwick on Damages, (6th Ed.,) 444, 446; *Baldwin* v. *U. S. Tel. Co.*, 45 N. Y. 744.

The judgment of the court should be modified so as to conform to the report of the referee.