L. H. PROCTOR and Another v. C. E. STEVENS LAND COMPANY.[1]

February 3, 1905.

Nos. 14,168—(199).

**Breach of Executory Contract.**

The vendee of an executory contract may recover, as for money received, the value of a stock of merchandise turned over to the vendor to apply upon the purchase price of land, upon a failure on the part of the vendor to comply with his agreement to convey.

**Rescission by Vendee.**

The facts stated in the complaint are sufficient to permit a recovery as for money had and received, although the ground of rescission alleged in the complaint is the fraudulent representations of the vendor as to his ownership of the land.

**Findings.**

The findings of fact are sustained by the evidence.

Action in the district court for Ramsey county to cancel on the ground of fraud a contract for the sale of land and to recover $5,500, the value of property delivered to defendant on account of the purchase price stipulated in the contract. The case was tried before Orr, J., who found in favor of plaintiff for the sum demanded. From a

[1] Reported in 102 N. W. 395.

judgment entered pursuant to the findings, defendant appealed. Affirmed.

*A. A. Miller, Martin O'Brien,* and *Frank H. Ewing,* for appellant.
*Sheehan & Keefe, W. E. Dodge,* and *V. W. Dodge,* for respondents.

LEWIS, J.

August 22, 1902, plaintiffs and defendant land company entered into a contract in writing in part as follows:

> This duplicate contract and agreement, for the sale of land, made and entered into this 22nd day of August, A. D. 1902, by and between the C. E. Stevens Land Company, of Crookston, Minn., party of the first part, and L. H. Proctor and W. H. Davis, of Nevada, Iowa, parties of the second part: Witnesseth: That the party of the first part has this day sold unto the parties of the second part all of section 33, in township 154 north, of range 46 west, at the agreed price of $22.50 per acre, making a total consideration, $14,400.

It was further agreed that the second parties were to turn over to defendant a stock of general merchandise located at Nevada, Iowa, to be invoiced at wholesale prices and five per cent. added. As a further payment the second parties were to execute a first mortgage upon the land purchased, to be negotiated by the first party, if the second parties should so elect, such mortgage to be for the amount of $5,000 or more, if it could be obtained, and, if negotiated, the amount received to be paid the first party upon the purchase price, and the remainder of the consideration to be paid in four promissory notes due in one, two, three, and four years. Seven days later, August 29, another agreement was entered into, in part as follows:

> Witnesseth: That whereas, C. E. Stevens Land Co. has sold unto L. H. Proctor and W. H. Davis certain land in Polk county, Minn. * * * said land being sold on contract to the C. E. Stevens Land Co., and it being understood that the C. E. Stevens Land Co. holds title to said land by contract issued thereon by the St. Paul, Minneapolis & Manitoba Railroad Co., it is hereby provided that ninety days time is to be given for the placing of a certain loan provided for by the original contract

\* \* \* and the delivery of title papers in the form of deed to L. H. Proctor and W. H. Davis is to be made within ninety days from this date, providing such loan is placed. If such loan is not placed and title papers not delivered in ninety days from this date, the C. E. Stevens Land Co. agree to assign unto L. H. Proctor and W. H. Davis the four certain railroad contracts issued by the St. Paul, Minneapolis & Manitoba Railroad Co., the said contract conveying title to the northeast quarter, northwest quarter, the southwest and the southeast quarter, respectively, of section 33—154—46. It being the intent of this instrument to provide for the assignment of the railroad contracts above referred to but in no respect is this contract to change the terms of the original contract. \* \* \*

There was attached to the contract a memorandum, as follows:

And pending the placing of such loan the C. E. Stevens Land Co. hereby assign four certain railroad contracts issued by the St. Paul, Minneapolis & Manitoba Railroad Co., covering the land described, unto L. H. Proctor and W. H. Davis.

In pursuance of this agreement plaintiffs turned over to defendant the stock of merchandise, but, not having received a conveyance of the premises, according to the terms of the contract, this action was commenced to recover the value of the stock of goods, with interest, upon the theory that defendant fraudulently represented, when the contract was executed, that it was owner of the premises, and falsely pretended to sell and convey to plaintiffs the same when it had no title thereto, and that, relying upon such representations, plaintiffs executed their part of the agreement, and delivered the stock of goods.

The court found the contract to have been executed as above set forth, and further found that the four certain land contracts covering the premises in question had originally been issued by the railroad company to one F. L. Maytag; that such contracts were not, by their terms, assignable, except by the consent and approval of the railroad company and the land commissioner, duly indorsed thereon; that, although Maytag assigned the contracts to defendant company, the necessary consent was never obtained; that defendant never owned the contracts, either as assigned or otherwise, and never owned or possessed any

right, title, or interest in or to the land. The court also found that plaintiffs had never received any consideration for their stock of goods so transferred; that demand for full performance of the agreement was duly served by plaintiffs upon defendant, and that plaintiffs were ready and willing to perform their part upon receipt of the title papers to the land; that November 16, 1903, plaintiffs duly served a written notice rescinding the contracts and demanding a repayment of the value of the goods, amounting to $5,500, which was refused. The court further found that the four railroad contracts issued to Maytag were defaulted for nonpayment of the purchase price, and that defendant had notice thereof.

At the time of the execution of the supplemental contract plaintiffs were informed of the fact that title to the land in question was to be derived from the railway company by means of four certain railway land contracts, and, although the attached memorandum would indicate the contracts were intended to be assigned to plaintiffs at the time the duplicate contract was entered into, there is no evidence that plaintiffs ever saw the original contracts, or knew they had originally been issued to Maytag. So far as the record shows, plaintiffs relied upon the written agreements to the effect that the railway contracts were issued directly to defendant land company. It would be immaterial whether defendant derived its title through such railway land contracts directly from the railway company, or by means of proper assignments from the original purchaser, if they, in fact, acquired title.

At the trial defendant took the position that it had complied with its obligation, had secured proper assignments of the land contracts from Maytag, and was in position to tender a proper title at any time plaintiffs would carry out their part of the agreement, viz., to execute and deliver the mortgages therein set forth. The court found that the assignments which defendant held from Maytag were not valid for the reason that they had not been approved by the land commissioners. This point would seem to be fatal to defendant's position, but, waiving that, there is another finding to the effect that these very contracts had been canceled on account of default in payment of the purchase price, and for that reason defendant had no right, title, or interest in the premises. This finding is assigned as error, it being claimed that the contracts had been reinstated. While reinstated, we find no evi-

dence as to the time, or that it was for defendant's benefit. The finding of the court is sustained by the evidence.

It having been established that defendant, at the time of executing the original contract, had no title and had no interest whatever in the premises at the time of executing the supplemental contract, and it appearing that at no time thereafter, up to the rescinding of the contract, did defendant acquire any right, title, or interest to the land, defendant was in default, having failed to perform its part of the agreement, and therefore was not in position to call upon plaintiffs to make a tender of the mortgages. It is found that plaintiffs were at all times ready and willing to perform their part of the agreement upon being furnished with proof of title in defendant, and this finding is supported by the evidence.

The mortgages were to be given as part payment of the purchase price, and, assuming that plaintiffs had elected to permit defendant to negotiate the $5,000 mortgage and apply the proceeds upon the purchase, the contract did not provide that such mortgage should be executed and delivered in advance upon the railroad land, whether or not defendant had any title. There is no evidence to the effect that plaintiffs so understood the agreement, or acted with that understanding of the facts.

The question of fraud is immaterial in this case in determining the rights of the parties. Conceding that defendant was acting in good faith, and expecting to perfect title, plaintiffs were entitled to recover what they advanced as money had and received, and the complaint is comprehensive enough for that purpose. Taylor v. Read, 19 Minn. 317 (372); Herrick v. Newell, 49 Minn. 198, 51 N. W. 819; Kicks v. State Bank, 12 N. D. 576, 98 N. W. 408.

Judgment affirmed.