CHARLES I. BALDWIN et al., Respondents, *v.* THE UNITED
STATES TELEGRAPH COMPANY, Appellants.

The lines of two telegraph companies terminated at S., the one leading from O. to S., and the other from S. to R. Messages passing over the line of the former company for transmission beyond S. to R., were customarily received by the latter company. The plaintiff at O. sent a message to R., paying for the whole distance.—*Held*, that no partnership or mutual agency could be inferred from such facts. Each of the companies, in the absence of evidence of a special agreement or arrangement, either with the sender of the message, or between each other, will be liable for his own acts, but not for the acts and defaults of the other.

The rule of damages, recoverable for the non-delivery of, or mistake in delivering telegraphic messages is the natural and necessary consequence of the breach of contract as contemplated by the parties, interpreting the contract in the light of the circumstances under which, and the knowledge by the parties of the purposes for which, it was made, and when a special purpose is intended by one party, but is not known to the other and is not indicated by the message itself, such special purpose will not be taken into account in the assessment of damages for the breach of contract to send. The damages in such a case will be limited to those resulting from the ordinary and obvious purpose of the contract.

An error in transcribing the direction, and a consequent misdelivery, is *prima facie* evidence of neglect and want of care in the operator, and casts the burden of proof upon the company of explaining the error and showing that it occurred without fault.

A message was delivered to the operator at O., by the plaintiff, to be telegraphed to the plaintiff's agent at R., requesting such agent to telegraph back to the plaintiff the condition of certain petroleum oil wells at R., belonging to the plaintiff, and the operator was informed by the plaintiff, that unless an answer was received promptly he should sell the well at a certain sum, which had, to the knowledge of the operator, been offered him. The ordinary charge was paid for transmitting the message the whole distance, and it was transmitted to S., and there received by the defendant and by them transmitted over their line to R. By a wrong direction it did not reach the plaintiff's agent for some days afterward. The defendant's agent had no knowledge of the special purpose of the message. The plaintiff, receiving no response, sold at the offer. It afterward appeared that the well was worth, and could have been sold at a higher price.—*Held*, that the defendant was not liable for this difference, nor for any damages arising from an under sale by the plaintiff.

(Argued May 31st; decided June 6th, 1871.)

APPEAL from the judgment of the General Term of the Supreme Court in the fourth judicial district, affirming the judgment of the circuit in favor of the plaintiff for $1,200 damages.

Action for damages occasioned by the non-delivery, within a reasonable time, of a dispatch transmitted by the plaintiff over the defendant's telegraph lines. The defendant is a corporation formed under the general laws of this State authorizing the incorporation of telegraph companies (Laws of 1848, chap. 265), and at the time of the transactions involved in this action had a line in operation between Syracuse, in this State, and Rouseville, Venango county, Pennsylvania. At the same time, the United States Branch Telegraph Company, a corporation created under the same laws, was in existence as a telegraph company, and had a line in operation between Ogdensburgh and Syracuse. On the 16th of November, 1864, the plaintiffs delivered to the operating agent of the latter corporation at Ogdensburgh a dispatch addressed to Erie Darling at Rouseville, signed by F. B. Baldwin, in these words: "Telegraph me at Rochester what that well is doing." And paid for its transmission to its destination at Rouseville. The plaintiffs proved, under objection, that at the time of handing the message to the operator at Ogdensburgh, they were the owners of an interest in an oil well at Rouseville, and that Darling was their agent to look after lands to which the message related, and that they had received by telegraph, through the same operator, an offer of $3,800 for the well, and that they then told the operator that F. B. Baldwin, one of the plaintiffs, would go to Rochester by first train and accept the offer, unless the answer to the dispatch showed the property to be worth more; that they wanted to find out if there was anything new in regard to the property; that they wanted to get the dispatch to Rouseville so as to get an answer to F. B. B. at Rochester, to prevent his selling at $3,800 if there was anything new about the property. One of the plaintiffs testified that he told the operator that he was going to Rochester to

accept the offer at once, unless he heard by reply to this dispatch that the wells were worth more. Evidence was given tending to prove that the dispatch was delivered from the defendant's office at Rouseville at the residence of Darling, but addressed to " E. R. Cooley," so that it was not received and opened by Darling, for whom it was intended, until several days after its transmission. F. B. Baldwin went to Rochester, and not receiving a reply to the dispatch, after waiting several days, accepted the offer of $3,800, and sold the property. A few minutes after making the sale he received by telegraph, by the way of Ogdensburgh, a dispatch addressed to him at Ogdensburgh, from Darling at Rouseville, dated November 25th: " Well flowing eighty barrels. New well pumping twenty-five barrels. Can sell your interest for five thousand dollars. Telegraph me refusal for ten days. Have Perry transfer to me." Evidence was also given tending to prove the market value of the property at $6,000.

The judge at circuit, under the objection and exception of the defendant, ordered a verdict in favor of the plaintiff for $1,200, and the judgment upon the verdict having been affirmed by the court at General Term, the defendant has appealed to this court.

*Grosvenor P. Lowery*, for appellants, on the question of agency. (*Scothorn* v. *So. Staffordshire*, 8 Exch., 841; *Muschamp* v. *Lancaster*, 8 M. & W., 421; *Foy* v. *Troy*, 24 Barb., 382; *Nescon* v. *Hamilton*, 2 Drury & Warren, 364; *Bank of U. S.* v. *Davis*, 2 Hill, 461; *Hargraves* v. *Rothwell*, 1 Kern., 159, 160.) Reasonable exertions must be made to render the injury as light as possible. (*Hamilton* v. *McPherson*, 28 N. Y., 72, 76; *Milton* v. *Hudson R. S. Co.*, 37 N. Y., 210, 214; *Wilson* v. *Newport Dock Co.*, 4 H. & C., 232.)

*E. C. James*, for the respondents, as to the company's liability, where mistakes occur, and the message has not been

repeated.  (*Sweatland* v. *Tel. Co.*, 27 Iowa; *Mann* v. *West. U. Tel. Co.*, 37 Mo., 472; *Camp* v. *West. U. Tel. Co.*, 1 Met., Ky., 164; Redfield on Carriers, §§ 556, 557.)   On the question of damages. (*Leonard* v. *N. Y., etc., Tel. Co.*, 41 N. Y., 544; *Mesmore* v. *N. Y. Shot and Lead Co.*, 40 N. Y., 422; *Bryant* v. *Am. Tel. Co.*, 1 Daley, 547; *Gildersleeve* v. *U. S. Tel. Co.*, 29 Md.; *Squire* v. *West. U. Tel. Co.*, 98 Mass., 382; *Wenger* v. *U. S. Tel. Co.*, 55 Penn., 262; *Griffin* v. *Colver*, 16 N. Y., 489; Scott & Jarragan on Telegraphs, §§ 387 to 411.) .

Allen, J.   Several questions of more or less importance are presented by the appeal in this action, bringing up as it does, not only the trial and the decisions and rulings therein, but the decisions and judgments of the Supreme Court upon the demurrers to several of the answers of the defendant; but in the view we take of the case, it is necessary to consider but one, as that is decisive of the action, except as it may possibly be maintained for the recovery of nominal damages. The defendant was held liable to special damages, largely in excess of any that would ordinarily be in the contemplation of the parties, or would ordinarily and naturally result from the neglect of duty imputed to the defendant, upon the ground that the Ogdensburgh company, or its agent and operator at Ogdensburgh, was the agent of the defendant in the receipt of the message, and that the latter was chargeable with and affected by knowledge and information possessed by or communicated to the supposed agent, touching the service to be performed, the object and purpose of the message, and the consequences which might result from a non-delivery of it. The defendant has been held liable as upon a special contract, stipulating the damages, in case of failure to perform the required service, at the difference between the actual value of the property contemplated to be sold and the price then offered, and as if the defendant had expressly agreed that, upon a failure to deliver the message to the person to whom it was addressed without delay, the plaintiffs might sell their property at a specified

price, without making further effort to ascertain its value, and the defendants would, as the measure of their liability, pay the loss resulting from a sale at less than the actual value, and this upon receipt of the comparatively insignificant sum fixed and paid for sending ordinary messages ; that is, upon payment of the usual fee for the service, without compensation for the extraordinary care and diligence required, or the risk and responsibility incurred, and without knowledge or thought by any one, so far as appears, of the possible extent of such a liability. No ordinary agent and servant could make such a contract in behalf of the company represented or served by him. It would not be within the ordinary scope of his duties, and it would require some evidence of authority or usage of the corporation to sanction and uphold such an agreement as the agreement of the company, and bind it. It is not intended to deny that a corporation is bound by knowledge of and notice to its agent touching the duties of his agency, and that notice to the agent, while employed in the business intrusted to him, and connected with or relating to that business, is notice to the principal, and that the principal will be subjected to all the legitimate consequences of such notice, as if it had been given to him personally. Here, however, the principal has been held liable to damages other than such as result from mere notice of the situation of the parties and the property which was the subject of the message. But passing this question, there was no agency for the defendant, at Ogdensburgh, proved upon the trial. The first connection of the defendant with the message was at Syracuse, and by receiving it from the agents of the Ogdensburgh line, for transmission from Syracuse to Rouseville. Neither the Ogdensburgh company nor the operator of that company at Ogdensburgh was the agent of the defendant for any purpose. It may be conceded, that when the defendant received the message from the other company at Syracuse, it assumed a duty, and came under a liability directly to the plaintiff, and for any omission or neglect of the duty then assumed, the plaintiffs could maintain an action.

(*Leonard* v. *N. Y., etc. Tel. Co.*, 41 N. Y., 544; *Squire* v. *W. U. T. Co.*, 98 Mass., 232.) There was no evidence of any business relation between the two telegraph companies. These lines were co-terminus, the one terminating and the other commencing at Syracuse, and the defendant, as required by law, received messages from the Ogdensburgh company which had been received at Syracuse over the lines of the latter company, to be transmitted to places on the defendant's line. No partnership or mutual agency can be inferred from such terminal relations, and the business transactions resulting therefrom. The statute, under which the two companies became incorporated, required each to receive dispatches from the other, on payment of the usual charges, and to transmit the same. (Laws of 1848, ch. 265, § 11; Laws of 1855, ch. 559.)

A compliance with this act, or the rendering a service which would be a compliance, is not the slightest evidence of any partnership or other business relation between them. It is like the case of several successive carriers of goods over an extended route, each as occasion requires receiving goods from the other for carriage. Each, in the absence of evidence of a special agreement or arrangement, either with the owner of the goods, or between each other, will be liable for his own acts, but not for the acts and defaults of the others. (*Squire* v. *W. U. Tel. Co.*, *supra*.)

The defendant received the message without notice or information of any fact indicating that extraordinary care or speed in its dispatch or delivery was important or expected, or that extraordinary or special damages would result from any neglect or want of care or accuracy in performing the service. The message did not import that a sale of any property or any business transaction hinged upon the prompt delivery of it, or upon any answer that might be received.

For all the purposes for which the plaintiffs desired the information, the message might as well have been in a cypher or in an unknown tongue. It indicated nothing to put the defendant upon the alert or from which it could be inferred

that any special or peculiar loss would ensue from a non-delivery of it.    Whenever special or extraordinary damages, such as would not naturally or ordinarily follow a breach, have been awarded for the non-performance of contracts, whether for the sale or carriage of goods, or for the delivery of messages by telegraph, it has been for the reason that the contracts have been made with reference to peculiar circumstances known to both, and the particular loss has been in the contemplation of both, at the time of making the contract, as a contingency that might follow the non-performance.    In other words, the damages given by way of indemnity have been the natural and necessary consequences of the breach of contract, in the minds of the parties, interpreting the contract in the light of the circumstances under which, and the knowledge of the parties of the purposes for which, it was made, and when a special purpose is intended by one party, but is not known to the other, such special purpose will not be taken into account in the assessment of damages for the breach.    The damages in such cases will be limited to those resulting from the ordinary and obvious purpose of the contract.    (*Cory* v. *Thames Iron Works*, L. R., 3 Q. B., 181; *Leonard* v. *N. Y. and B. Tel. Co.*, *supra*; *Messmore* v. *N. Y. Shot and Lead Co.*, 40 N. Y., 422; *Hadley* v. *Baxendle*, 9 Exch., 341; *U. S. Tel. Co.* v. *Gildersleve*, 29 Maryland, 232; *Griffen* v. *Colver*, 16 N. Y., 493; *Landsberger* v. *Mag. Tel. Co.*, 32 Barb., 530.)    In *Leonard* v. *A. and B. Tel. Co.*, *Squire* v. *W. U. Tel. Co.* (*supra*), and *U. S. Tel. Co.* v. *Wenger* (55 Penn. R., 262), the object of the messages and the purposes of the persons sending them were clearly indicated by the messages themselves, and the damages awarded were such as necessarily and ordinarily attend a failure of the purpose, and would naturally result from the neglect of the telegraph company to perform its duty.    Assuming that the answers of the defendant, which had been held bad upon demurrer, and upon which judgment had been given for the plaintiff, were before the court upon the trial so as to make the statements evidence as admissions, a *prima facie* case of

negligence was made against the defendant. The message had been delivered to the company at Syracuse, properly addressed and directed, and it was delivered at the place of its destination from the office of the defendant misdirected and addressed to a different name, so that it did not reach the person for whom it was intended. This, unexplained, would have authorized a verdict for the plaintiff.

While telegraph companies are not insurers and do not guarantee the delivery of all messages with entire accuracy, and against all contingencies, they do undertake for ordinary care and vigilance in the performance of their duties, and to answer for the neglect and omission of duty of their servants and agents. The nature of the business is suggestive of many risks and contingencies to which no other business or agency is subject. The electric current may be interrupted and the current broken without fault of the corporation, so as to obstruct telegraphic communication, and words of different signification may be represented by characters so similar that errors in transcribing may occur without fault on the part of the person transcribing it, or technical terms may be used not easily expressed by telegraphy, and in which errors may occur without fault. These, and risks of the like character, are upon the person sending the message, unless he elects to comply with the terms of the company, and have the dispatch repeated, by which certain risks are guarded against and errors prevented or insured against. But an error in transcribing the direction, and a consequent misdelivery, are *prima facie* evidence of neglect and want of care in the operator and cast the burden upon the company of explaining the error and showing that it occurred without fault. This is upon the supposition that the message is received for transmission unconditionally. For the purposes of this appeal it is assumed, but not decided, that this message was not subject to the terms and conditions ordinarily attached to the receipt of messages for transmision, but that the defendant is subject to all the liability which legally results from a receipt of a

message and a naked agreement to transmit the same to its destination for a reasonable compensation paid therefor.

If the terms and conditions, ordinarly imposed, were a part of the contract, the question would arise whether the defendant would not be protected against liability for the "error and delay" in the delivery of this dispatch. (See *Mac-Andrew* v. *Electric Tel. Co.*, 17 C. B., 3; *Ellis* v. *Am. Tel. Co.*, 13 Allen, 226.)

The dispatch, not indicating any purpose, other than that of obtaining such information as an owner of property might desire to have at all times, and without reference to a sale, or even a stranger might ask for purposes entirely foreign to the property itself, it is very evident that, whatever may have been the special purpose of the plaintiffs, the defendant had no knowledge or means of knowledge of it, and could not have contemplated either a loss of a sale, or a sale at an under value, or any other disposition of or dealing with the well or any other property, as the probable or possible result of a breach of its contract. The loss which would, naturally and necessarily, result from the failure to deliver the message, would be the money paid for its transmission, and no other damages can be claimed upon the evidence as resulting from the alleged breach of duty by the defendant. The plaintiffs have lost the money paid the Ogdensburgh company, and are entitled to recover it, but the sale of their property at a loss was not in the contemplation of the parties, and the damages resulting therefrom were not the natural and ordinary damages resulting from the breach of duty by the defendants.

Indeed, I doubt if under any construction of the contract, or in any view of the rights and obligations of the parties, such damages could be recovered by the plaintiffs, as the result of the non-delivery of the message. They are quite too remote, and depend upon too many contingencies. Had the message been received, the agent might or might not have answered it; and what the answer would have been cannot certainly be known. The answer might or might not have been received by the plaintiffs at Rochester, and if received,

it is conjectural what might have been the action of the plaintiffs thereon. Again, the sale without an attempt to obtain further information was the voluntary act of the plaintiffs, neither caused nor encouraged by the act or default of the defendant. The mere assertion to the operator at Ogdensburgh, had he been the agent of the defendant, that they would sell if no answer was received to the message, did not relieve them of the duty resting upon all persons, for whose losses others may be liable to respond, to. take all reasonable measures to avoid loss or to diminish the damages that may occur. This principle is applicable to all who may claim indemnity from others for losses, either upon express contract or for torts. (*Hamilton* v. *McPherson*, 28 N. Y., 72; *Milton* v. *Hudson River St. B. Co.*, 37 id., 210; *Wilson* v. *Newport Dock Co.*, 4 H. & C., 232.) The defendant offered evidence tending to prove that the plaintiffs might, before the sale of the property, have obtained the desired information which it is claimed would have prevented its consummation and avoided all loss, and it should have been received, as it would have constituted a perfect defence.

It cannot be claimed that there was any valid contract of the defendant by which the plaintiffs were insured against the consequence of their own acts or neglect.

The judgment must be reversed and a new trial granted, costs to abide event.

All the judges concur, except RAPALLO, J., not present, and FOLGER, J., not voting.

Judgment reversed.