By the Court.—Curtis, Ch. J.†
The defendant urges that the verdict for the plaintiff cannot be sustained, because the damages awarded him were not within the contemplation of the defendant when he made the contract, and that this case is governed by what was held in Baldwin v. United States Tel. Co., 45 N. Y. 744.
In the present case, the text of the message which the defendant failed to transmit until after a delay of several days, indicates upon its face no occasion for special care, or the involving of the chartering of the vessels. There was no notice or information of any fact given to the defendant or contained in the message *154 itself, indicating its importance, or that special damages would result from any neglect. However strongly the plaintiff may have felt assured, acting as a broker in the matter, that the offer telegraphed to his principals would be accepted, and that he would get his five per cent, commissions, yet there is nothing in the case that places these contingencies, in themselves, uncertain and remote, within the contemplation of the defendant. ' It is true the plaintiff’s principals might have accepted the offer and paid the plaintiff the commissions, and their evidence is that they would have accepted it, if it had not been delayed by the neglect of the defendant in failing to forward it immediately. The claim of the plaintiff is for a special and contingent loss, and not for such a loss as.was the natural and necessary consequence of the defendant’s neglect, or such as, from the surrounding circumstances, could even be inferred by the defendant.
The decision in Baldwin v. United States Tel. Co. (45 N. Y. 744), that where a special purpose is intended by one party and is unknown to the other, and does not appear by the message itself, that in the assessment of damages such special purpose cannot be taken into consideration, but that the damages must be limited to those resulting from the ordinary and obvious purpose of the contract, governs the case under consideration.
There should be a new trial, unless the plaintiff reduces his verdict to $2.05, the sum paid defendant to transmit the message, with interest from April 15, 1872.
Both the other judges concurred.
There was no appeal.
Note on Measure of Damages in Telegraph Cases.
The following abstracts of decisions, pertinent to the point, particularly of the measure of damages which may be properly allowed, *155 within the rule relating to contemplation, &c., where the nature, and especially the extent of the loss which may result from breach of the contract, even in cases of negligence, are not disclosed, either by the text of the message, or by information apart from that,—was submitted by defendant’s counsel as part of his brief.
Shields v. Washington Tel. Co. (La., 1852), Allen Tel. Cas. 5.
Message was, “Oats, fifty-six; bran, one ten; corn, seventy-three; hay, twenty-five;” delivered—oats, sixty-six.
No explanation of the meaning of the message was made to the company.
Held, that the measure of damages was the price paid for sending it.
Buchanan, J.—“ The person who sent the dispatch made no explanation to the operator, and without explanation how could the operator know whether the numbers referred to dollars and cents, or to bushels and bales, ... or whether the dispatch conveyed an order to purchase, or an account of sales. And if he were bound to infer the former, what information did the dispatch convey to his mind of the extent of the order.....The telegraph company had no means of knowing the extent of the responsibility which ought to be involved in the correct transmission.”
Lane v. Montreal Tel. Co. (Canada, 1857), Allen Tel. Cas. 61.
A., at Detroit, had chartered his vessel to carry 8,000 bushels of corn from Detroit to Ogdensburgh. He sent message from Detroit to Chatham to B., asking if B. could load his vessel with 8,000 bushels of wheat to Oswego. The message, as delivered, read 8,000 in place of 8,000. B., answering affirmatively, A. gave up the first charter, and got only a cargo of 8,000 bushels.
Held, A. could recover only £25, the expense of sending his vessel from Detroit to Chatham and back, as being the damage that naturally flowed from the breach of defendant’s duty or contract, or which might have been reasonably in contemplation of the parties at the time.
Richabds, J.—. . . “The claim for freight, either as to the 5,000 (other) bushels which A. expected to get, or as to the corn, the contract to carry which he gave up in consequence of the reply to his message, . . . we do not think he is entitled to recover. . . . The real damage he sustained was for giving up that contract. This is not alleged in the declaration as special damage, nor was the fact of such a contract having been made communicated to defendant’s servants at the time the message was sent. So that it cannot be said that the damages in relation to it were in the contemplation of both parties at the time. The damages should stand as assessed, at £25.”
*156 Stevenson v. Montreal Tel. Co. (Canada, 1858), Allen Tel, Cas. 71.
A. sent to his agent, B., this message: “Am disposed to realize; sell 1,500 barrels.” Nothing was said on delivering the message to the defendant as to the importance, nor, so far as appears, as to the meaning of the message.
Burns, J.—After laying down the general rule as to contemplation, &c., said, upon the point of damages: “Trying this case by the rule, how is it possible for any one to say that in the contract to transmit the message, either the rise or fall in the flour market, entered into the consideration of the matter, so far as the defendants were concerned 8 It may have formed an ingredient with the plaintiff, it is true; but then he should have communicated that information to the defendant, so that, in fact, that consideration might be said to be fairly imported into and form part of a contract. The defendant could not imply it from the words of the message.”
Judgment was for defendant.
Kinghorne v. Montreal Tel. Co. (Canada, 1859), Allen Tel. Cas. 98.
A., at Kingston, sent to B., at Oswego, message: “Do accept your offer. Ship to-morrow fifteen or twenty hundred.” The message was to go on defendant’s line to Ogdensburgh, and there be put on another (American) line. It was delayed at Ogdensburgh.
Robinson, Oh. J.— . . . “What would the message have informed the man or boy at Ogdensburgh whose duty it was to take it from the wire, and send it by another man or boy to the American company 8 Nothing but that A. had accepted an offer, he could not tell for what, and would ship 1,500 or 3,000, whether of staves, or shingles, or barrels of flour, or bushels of grain, he could not tell, nor could he guess what might be the occasion for haste, or the consequence of delay or neglect. A possible loss or gain to the plaintiff, f depending on the time when the message would arrive, was a consent quence which the defendant could not appreciate, and cannot be sup- ^ posed to have contemplated. If the plaintiff had chosen to send a messenger express from Kingston to Oswego with his letter, rather than avail himself of the mail, and had given him a few shillings or dollars for conveying it, I do not think that the messenger, losing that message by carelessness, would have subjected him to the consequences of a change in tbe market price of rye, not even if the messenger had read the letter, which I hardly think the defendant can reasonably be held to have done in this case, for the directors cannot always be assembled at each station, and they must necessarily depend on operators and carriers, who can hardly be expected to be capable of appreciating, in their haste, the possible consequences of the imperfect messages brought to them to be dispatched.”
*157 Burns, J.— . . “It appears to me, that in order to charge the defendant with the fluctuation of the market, the parties using the telegraph should inform the company of the facts, the importance of the message, and other things connected with it, so that it may be known on both sides, what the nature of the undertaking or duty is, and that these matters should be treated as imported into and forming part of the contract and duty of the defendant in the transmission of messages.”
Plaintiff was nonsuited.
Landsberger v. Magnetic Co., 32 Barb. 530 (1860).
Message was, “ Get 10,000 of the mail company.”
Held, the defendant was not liable for loss of commission on a purchase which the sender would have made, if the telegram had been delivered, or for a penalty which he paid for not making the purchase—for such damages were too remote. The plaintiff was allowed to recover the price of the dispatch, and five days’ interest on $10,000.
Bonnet, J.—“In receiving the dispatch for transmission, the defendants had no information whatever in relation to it, or the purposes to be accomplished by it, except what could be derived from the dispatch itself. . . . What damage might they naturally expect to follow from the delay in the receipt of it ? Clearly the loss of the use of that sum during the time that its receipt was delayed; and the damages for the loss of such use are by the laws of New York . . . seven per cent.” Citing Griffin v. Colver and Hadley v. Baxendale in sustaining this conclusion.
Baldwin v. United States Tel. Co., 45 N. Y. 744 (1871).
Allen, J.—“ The defendants received the message without notice or information of any fact indicating that extraordinary care or speed in its dispatch or delivery was important or expected, or that extrai ordinary or special damages would result from any neglect or want of care or accuracy in performing the service. The message did not import that a sale of any property, or any business transaction hinged upon the prompt delivery of it, or upon any answer that might be received.
“ For all the purposes for which the plaintiffs desired the information, the message might as well have been in a cipher or in an unknown tongue. It indicated nothing to put the defendant upon the alert, or from which it could be inferred that any special or peculiar loss would ensue from a non-delivery. Whenever special or extraordinary damages, such as would not naturally or ordinarily follow a breach, have been awarded for the non-performance of con *158 tracts, whether' for the sale or carriage of goods, or for the delivery of messages by telegraph, it has been for the reason that the contracts have been made with reference to peculiar circumstances known to both, and the particular loss has been in the contemplation of both at the time of making the contract, as a contingency that might follow the non-performance. In other words, the damages given by way of I.ndemnity, have been the natural and necessary consequences of the breach of contract in the minds of the parties, interpreting the contract in the light of the circumstances under which, and the knowledge of the parties of the purposes for which it was made; and when a special purpose is intended by one party, but is not known to the other, such special purpose will not be taken into account in the assessment of damages for the breach. Damages in such a case will be limited to those resulting from the ordinary and obvious purpose of the contract.....
“The dispatch not indicating any purpose other than that of ¿ obtaining such information as an owner of property might desire to have at all times, and without reference to a sale, or even a stranger might ask for purposes entirely foreign to the property itself, it is _ very evident that whatever may have been the special purpose of the plaintiffs, the defendant had no knowledge or means of knowledge of it, and could not have contemplated either a loss of a sale, or a sale at an under value, or any disposition of or dealing with the well or any other property, as the probable or possible result of a breach of its contract. The loss which would, naturally and necessarily, result from the failure to deliver a message, would be the money paid for its transmission, and no other damages can be claimed upon the evidence as resulting from the alleged breach of duty by the defendant.”
Candec v. Union Tel. Co., 34 Wis. 471 (1874).
This was a cipher message, the words ‘ ‘ Arch Earlier, Henry Au- ' gusta,” being an order for the purchase of two hundred and fifty shares C. & N. W. stock.
From the opinion by Dixon, Ch. J., it appears that the omission of the operator to send forward the message was the result of gross negligence on his part. “It was a total failure to perform the contract, in excuse, for which no facts whatever were shown or offered by the company.”
Upon the point of the measure of damages, the court, referring to the case of Hadley v. Baxendale, said : “We are of opinion that the plaintiff is entitled to recover no more than nominal damages, or, as specified in the regulations, the amount paid for transmitting the message. ... It cannot be said or assumed that any amount of damages or any pecuniary loss or injury will naturally ensue or be *159 suffered, according to the usual course of things, from the failure to transmit a message, the meaning and import of which are wholly unknown to the operator. ... He cannot be supposed to look upon such a message as one pertaining to transactions of pecuniary value and importance, and in respect of which pecuniary loss or damage wi.L naturally arise incase of his failure or omission to send it. It may be a mere item of news, or some other communication of trifling and unimportant character. Ignorant of its real nature and importance, it cannot be said to have been in his contemplation at the time of making the contract, that any particular damage or injury would be the probable result of a breach of the contract on his part. In this case the message was in cipher, its meaning wholly unknown to the operator, and no explanation given of its true character. It is true that the plaintiff testified that the employee to whom he delivered the message, and the other persons engaged in the office, 1 knew that the message pertained to stock, because they knew" my business to be that business’; and it is true he likewise testified that he informed the boy in the office that it was a telegram that required attention and promptness in sending; but these facts, however much they may tend to show negligence in the employee or operator, fail to bring the case within the rule for the assessment of damages above stated. They fail to show that it was made known at the office that the transaction was one relative to the purchase or sale of stocks; . . . they fail to show that the agents of the company received any information as to the kind or quantity of stock directed to be purchased. For all that the operator knew or was informed, it might have been some communication or inquiry concerning stock, for the non-transmission of which no special damage could or would ensue. . . . To have put the company in a position of responsibility for the difference in the price of the stock . . . the agent or operator of the company at Milwaukee should have known the contents or meaning of the message, either by the same having been written out in plain and intelligible words, or by its having been otherwise explained to him. It might not, perhaps, have been necessary to give a full and literal translation; but the value to the plaintiff of the message, in a pecuniary sense, if we may be permitted so to speak, or the sum he was likely or liable to lose, or which he might, in the ordinary course of events, be damaged, in case the message was not accurately and speedily transmitted, ought at least to have been communicated to the agent or operator of the company.”
To the suggestion, on the part of the plaintiff, that if the operator was not apprised of the nature and importance of the communication, it was his fault, and that the duty rested upon him to make inquiry, *160 . . the court observes: “If we except the views expressed by Scott & Jarnagin in their Law of Telegraphs (§ 166 and note), counsel are without authority anywhere in support of this position, whilst the decisions and utterances which have come from the bench in numerous instances, have been quite clear and uniform against it.”
Dorgan v. Telegraph Co., U. S. Circuit Court, Southern Dist. Alabama, April, 1874 (1 Am. L. T. R. N. S. Sept. 1874, p. 407).
In response to dispatch sent by plaintiff to A. & Co., A. & Co. sent message: “Sold Samuel, basis silver, fob dog demon, prompt shipment, draw with documents. Edward Dobell. Insure. Telegraph drafts.” “ The meaning of this dispatch was not communicated to the defendant or its agents, but the clerk who received it was told it was important, and requested to forward it immediately.”
This dispatch translated would read: “Sold 500 bales, basis middling, free on board at 21% cents, freight % penny; prompt shipment. Draw with documents on Edward Dobell. Insure against fire. Telegraph drafts. ”
The plaintiff alleges that the delay in not delivering the dispatch sent by A. & Co. to him until January 81, was the result of the carelessness and negligence of the defendant and its agents, and that he suffered damage to an amount equal to the difference in the value of five hundred bales of cotton in Mobile on the 30th, and of the same quantity of cotton in Mobile on the 31st of January.
Woods, J., in his charge to the jury, said : “ The damage sustained by the defendant must have been within the reasonable contemplation of the parties at the time the contract for the transmission of the message was made. If the plaintiff, through his agent in New York, at the time he left the message for transmission, informed the defendant’s agent that the message was important, and the dispatch itself indicated that it was a business message, and that serious damage might accrue to the plaintiff if it was not promptly transmitted, it became the duty of defendant to use diligence to put it upon its transit, and it would become liable for the damage which might be the result of negligent delay in sending the message. But if the plaintiff’s agent simply said it was an important message, and requested its early transmission, but the dispatch itself was so worded that it did not in any way indicate that the plaintiff might suffer damage by its delay, then the defendant would only be liable for nominal damages.”
Beaupré v. Pacific & Atlantic Tel. Co., 21 Minn. 155 (1874).
Plaintiff sent this message: “Dispatch received, will take two hundred extra mess, price named.” The message was negligently *161 delayed. The message referred to pork, and before its delivery the price had advanced, so that the difference on two hundred barrels was the sum of $250, which were the damages claimed.
The court finds as a fact (p. 161), ‘‘the defendant had only such information of the nature and object of the message as was afforded by the message itself.”
Young, J.—“The message purports to relate to some business transaction, the nature of which is not disclosed It gives no intimation of the magnitude or importance of the business involved, or of the amount of damage that might result from a delay in transmitting it. The company might have known, from the tenor of the message, that it related' to a purchase of goods, and was presumably of some value; but the message itself, ‘ will take 200 extra mess, price named, ’ would hardly have informed the defendant of the nature, quantity, price or value of the goods which the plaintiff offered to take. The damage the plaintiff might suffer from a rise' in the market price of pork, if this message were not seasonably delivered, could hardly have entered into the contemplation of the defendant, at the time it received and undertook to transmit the message, as a probable consequence of the breach of its contract.” (Citing Stevenson, Kinghorne, Gildersleeve and Baldwin cases.)
In the opening paragraph of the opinion, after laying down the rule of Hadley v. Baxendale, the ‘court adds: “The damages must, moreover, be certain, both in their nature and in respect of the causé from which they proceed. They must not be the remote, but proximate consequences of the breach of contract, and must not be speculative or contingent ” (Griffin v. Colver, 16 N. Y. 495).
Booz v. Western Union Tel. Co., Baltimore, Jan., 1876 (Vide N. Y. Sun, Jan. 12, 1876).
The message “ordered one box of oysters of one kind, and one of another.” The text of the message is not given.
Brown, J., instructed the jury . . “ that the plaintiff could not recover; first, because the dispatch was addressed in ambiguous language, which did not explain itself to the common understanding, and in consequence the company could not be held liable,” &c., &c.
Sanders v. Stuart, 17 Eng. R. 288 (1876).
Defendant received from plaintiffs a message in words by themselves entirely unintelligible, but which could be understood by plaintiffs’ correspondent as giving a large order for certain goods, on which plaintiffs, if the order had been confirmed, would have earned a considerable commission. The defendant, through admitted negligence, did not transmit the message, and plaintiffs admittedly lost thereby considerable profits.
*162 It was urged, on behalf of plaintiffs, that though the message was in cipher, “ defendant ought, in the nature of things, to infer that it was of importance, and that negligence in the transmission of it might lead to serious loss; so that the damages might be said to be in the contemplation of the parties. . . . There was sufficient to put it on inquiry, and if he chose to take the message without knowing what it meant, he must be taken to have made himself responsible for whatever damages might ensue.” (Citing Sedgw. on Dam. 6 ed. 442; United States Tel. Co. v. Wenger, 55 Penn. 262.)
Coleridge, Oh. J.—. . “We think the rule in Hadley v. Baxendale applies, and that the damages recoverable are nominal only. It is not necessary to decide how the case might be if the message, instead of being in language entirely unintelligible, had been conveyed in plain and intelligible words. It was conveyed in words which, as far as defendant was concerned, were simple nonsense. For this reason, the second portion of Baron Alderson’s rule clearly applies. No such damages (as those claimed) could be 1 reasonably supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it,’ for the simple reason that the defendant, at least, did not know what his contract was about, nor what, nor whether any damage would follow from the breach of it. And for the same reason, viz., the total ignorance of the defendant as to the subject matter of the contract, . . the first portion of the rule applies also; for there are no damages more than nominal which can ‘ fairly, reasonably be considered as arising naturally, i. e., according to the usual course of things, from the breach ’ of such a contract as this.”
United States Tel. Co. v. Gildersleeve, 29 Md. 232 (1868).
The message was, “ sell 50 gold.”
Avert, J., upon the point of the measure of damages, after quoting Hadley v. Baxendale, said: “the same rule is now regarded as established in the courts of New York,” citing Griffin v. Colver and Landsberger v. Telegraph Co. . . . “Applying it to this case, the prayer of the appellee, which was granted, is clearly incorrect, for while it was proved that the dispatch would be understood among brokers, to mean $50,000 of gold, it was not shown that the .appellant's agents so understood, or whether they understood it at .all. 1 Sell 50 gold ’ may have been understood in its literal import, if it can properly be said to have any, or was as likely to be taken to •mean $50 as $50,000 by those not initiated. And if the measure of responsibility at all depends on a knowledge of the special circum- ■ stances of the case, it would certainly follow that the nature of this dispatch should have been communicated to the agent at the time it *163 was offered, in order that the appellant might have observed the precautions necessary to guard itself against the risk. But without reference to the fact whether the appellant had knowledge of the true meaning and character of the dispatch, and was thus enabled to contemplate the consequences of a breach of the contract, the jury were instructed that the appellee was entitled to recover the full extent of his loss by the decline in gold, . . . which was error.”
Behm v. Western Union Tel. Co. (U. S. Circuit Court, Indiana, Jan., 1878).
The plaintiff claimed that he had a contract with R., whereby R. was to sell to him a certain interest in real estate, and was to meet plaintiff at L. for the purpose of making conveyance of it: that plaintiff, finding it impossible to keep the appointment at L., sent the dispatch in question to his brother; that if it liad been delivered in time the brother would have closed the transaction in Ms place; that R. was ready at the time and place appointed, but plaintiff failing to appear, he sold to a third person, whereby plaintiff lost profits, as he claimed, $7,000, and for damages to that amount this suit was brought.
The message was: “ Take separate deed to Marks for White Tippecanoe & Iowa 4, and meet me at office at 9 to-night.”
In the course of his charge to the jury, Gbbsham, J., said: “ It is not insisted that when the dispatch was left with the operator at Monticello, ho was informed of the nature of the business to whicli it related.....Was the company informed, by the mere reading of the dispatch, of the nature of the contract between the plaintiff and Reynolds, that the plaintiff had a valuable contract with Reynolds, to secure the profits of which it was important the dispatch should be sent to Lafayette promptly and without delay? Unless you think, from the mere reading of the dispatch, the telegraph company was fairly informed of the nature of the contract between the plaintiff and Reynolds, and that the plaintiff was liable to sustain loss, if the same was not promptly forwarded and delivered at Lafayette, the plaintiff, in no event, is entitled to more than nominal damages. It would be unjust to the telegraph company to hold it responsible for damages without limit, when it is not informed by the dispatch itself or otherwise, that the sender may sustain heavy-loss, unless the message is transmitted and delivered immediately or without delay.....
“ But if you find there was nothing on the face of the dispatch to inform the company that the plaintiff would sustain loss if it was not promptly forwarded, and yet you find that the company was negligent, then you .will find against the defendant for nominal damages only.”
*164 Hord v. Western Union Tel. Co. (Superior Ct. Cincinnati, 1878), W. Cin. Law Bulletin, Feb., 1878, p. 147.
Plaintiff’s message was “To O. H. & L. Sold 100,000 clear rib; buyer March—seven—can sell more. ” The message was never delivered. Before the report of the message to C. H. & L., pork had fallen one cent per pound, and they refused to perform, and plaintiff paid his parties $1,000, which he sought to recover by this suit. The damages allowed him were the price of the message, with interest.
On motion for a new trial, Yaplb, J. (p. 149):—“As there was no evidence tending to prove that the plaintiff informed the telegrapher of the circumstances under, or the purposes for which he sent the dispatch, the court (below) told the jury that plaintiffs, though actionable negligence on the part of defendant was proved, could only recover the price paid for sending the dispatch, With interest ” (Field on Damages, 347-364; Beaupré v. Pacific & Atlantic Tel. Co., 21 Minn. 155; National Bank of Barnesville v. Western Union Tel. Co. [1878]).
“ This is in accordance with the entire current and weight of authority. What did the defendant know or what could the dispatch advise it about the plaintiff’s arrangement with C. H. & L. in relation to selling pork, and their agreed method of assenting to or disaffirming sales ? What of the importance in view of such arrangement of' the narration in the dispatch of a past fact, and of what the sender could do ? And what of the fact that plaintiff could and would pro,tect himself against loss, if his sale should (not?) be affirmed, by buying at once in the market just the amount of what he had sold ?
“We think it will be found that in all similar cases, in which substantial damages have been awarded, the dispatches reasonably and fairly disclosed on their face the damages that would or might result from any specific mistake, or for the failure to transmit and deliver them. This dispatch disclosed nothing of any pecuniary interest to the plaintiff or those to whom it was addressed.
. . . “What plaintiff would have done would have depended on his judgment, expectations and desire, and his voluntary action. How, then, can it be said that the ultimate loss was the natural, direct and necessary consequence of the failure to transmit and deliver the dispatch ?”
Judgment ordered on the verdict.
Barnesville Bank v. Western Union Tel. Co. (Ohio, 1878), Ohio. Legal News, Feb. 2, 1878, p. 157.
The plaintiff had an understanding with B., at New York, that he was to inquire as to the credit of certain parties; if not good he was to telegraph, if good he was to make no reply.
*165 B. sent this dispatch to plaintiff, “ Parties will accept if bill lading accompanies draft. Parties stand fair.”
It reached Buffalo, but never passed that point. Drafts for $3,000 were cashed, and this sum was sought in this action.
The court cites Leonard «. Telegraph Co., Hadley v. Baxendale, and other telegraph cases, and held that-the plaintiff could recover, under the rule respecting contemplation of consequences, only nominal damages.
. . . “Thefact that the company was not advised of any importance attaching to the message, either by the message itself or actual notice given, goes further to show a case where substantial damages cannot be recovered.”
The few cases in which substantial damages have been allowed, though there was no other information about the nature of the transaction involved in the message, than was furnished by the message itself, are collected below.
Parks v. Alta California Tel. Co. (Cal. 1850), Allen Tel. Cas. 114.
The message was “Due 1800, attach if you can find property.” The judgment for defendant below was reversed by this decision. But, under the circumstances, it is not a substantial decision against the company.
Washington Tel. Co. v. Hobson (Va. 1859), Allen Tel. Cas. 122.
In this case “Jmx?-hundred bales ” in the message was changed to twenty-fine hundred.
New York, &c. Co. v. Dryburg, 35 Penn. 298 (1860), Allen Tel. Cas. 157.
“Two hand, bouquets” was changed to two hundred bouquets, and the company was held liable on the ground of a tort or misdoing by the operator.
Birney v. Telegraph Co., 18 Md. 341.
Judgment below was for defendant. This judgment on appeal reversed that. It appears from the report (Allen Tel. Cas. 196), that the message in this case distinctly ordered the sale of 100 shares of New York Central stock. But the measure of damages does not appear to have been a contested point in the case.
Bryant v. American Telegraph Co., 1 Daly, 575.
This was a very strong case, upon the facts, against the company. Not only did the dispatch, by its terms, disclose the whole value involved, but it contained admonitions to the attorney to whom it was addressed, which showed the importance and urgency of the affair very clearly. And besides that, these things were very explicitly repeated to the operator who received the message.
*166 Notwithstanding all this, Daly, P. J., dissented, and in an opinion? of great weight.
De Rutte v. New York Tel., &c. Co., 1 Daly, 547.
In this case also the text of the message very fully disclosed the nature and extent of the transaction to which it referred. “ Buy for C. & L., bankers, a ship load of five to six hundred tons white wheat, first quality, extreme limit twenty-two francs the hectolitre, landed at Bordeaux, same conditions as the Monod contract.” “ Twenty-two” was changed to “ twenty-five.”
The defendant does not concede that the judgment, in respect to the measure of damages, is sound. But the circumstances do certainly strongly defend it.
In Wenger v. United States Tel. Co., 55 Penn. St. 262, the message was also explicit as to the number of shares. “ Buy 50 Northwestern, 50 Prairie du Chien, .limit 45.”
Thompson, J., said, on the point in question: “The dispatch was such as to disclose the nature of the business to which it related, and the loss might be very likely to occur, if there was a want of promptitude in transmitting it. In this respect it differs much from Landsberger v. Magnetic Tel. Co.”
Notice also the remark by the court that the sender “notified the operator that he would look to the company for damages if they failed in transmitting the message.”
This decision also is one which merely reversed a judgment below and ordered a new trial.
Leonard v. Telegraph Co., 41 N. Y. 544 (1870).
Send five thousand “sacks” of salt was changed by defendant to . . . “casks” . . . Here, it may be claimed, with much force, that the nature and extent of the transaction, and the pecuniary amount involved, were shown by the text of the message, and there was also the affirmative direction by the defendant to send “ casks.”
True v. International Co., 60 Maine (1870).
“ Ship cargo named, at 90, if you can secure freight at 10.” The court makes it a material element in its judgment that this message “ on its face gives a clear intimation that it is of a business character, relating to a distinct and specific contract, and that, according to the well-known custom of merchants, it must have been understood by the operator or agent as an acceptance of an offer to sell a cargo at the price named, if freight at ten cents could be procured. In this respect it differs from cases to be found in the reports where the message was so brief, or so enigmatical, or so obscure, that it gave the operator no notice that it was of any value pecuniarily: ”
*167 Rittenhouse v. Independent Tel. Co., 44 N. Y. 263.
The message was; “If we have any old Southern on hand, sell same before board. Buy five Hudson at board.” “Hudson” was changed to “hundred,” so that five hundred old Southern were bought. For loss in this and rise in the five hundred Hudson, plaintiff claimed damages.
The court held that the case was fairly controlled by the case of Leonard, &c.
In a note by the editor of Am. Law Reports, at vol. 9, p. 55, it is said, with very significant force, that “the message evidently related to a business transaction; but as to its character or the probable consequences of a mistake, they were as far from being indicated upon the face of the telegram as they would have been if it had been written in cipher,”
And this criticism applies with still more force to the case of Graham ([Colorado, 1871], 10 Am. Law Reg. N. S. 319); “ Ship oil as soon as possible, at very best rates you can;” and to that of Squire (98 Mass. 232): “ Will take your hogs at your offer;” also of Strasburger (Allen Tel. Cas. 661), “sell silver lepines for 10, also others for less.” The decision in this case was that of the judge who tried the case. The case was settled, and no appeal was ever taken.
As the report of Sprague v. Western Union Tel. Co. (6 Daly), does not give the dissenting opinion of J. F. Daly, J., in full, that opinion is copied here.
J. F. Daly, J. —I cannot concur in the opinion that the plaintiff was entitled to recover, as damages, the counsel fee of his counsel for the journey to Buffalo, and the time consumed in going there and returning. Plaintiff, on September 21, 1873, delivered to the clerk in charge of defendant’s telegraph office at the Fifth Avenue Hotel, New York, the following message for transmission by telegraph to Buffalo: “New-York, September 21, 1873. To John T. Gardner, Esq., Attorney-at law, 194 Main street, Buffalo: Please hold my case till Thursday next. Please reply at once. Edward D. McCarthy.”
When the message was delivered to the defendant’s clerk, he was told “what it was about, that it was about a cause in Buffalo which we expected would be called, and that it was of great importance we should get an early reply the next day, in order that we might know when to go to Buffalo.” This was the testimony of Mr. McCarthy, plaintiff’s attorney and counsel, who drew up and delivered the message at plaintiff’s instance and in his presence. On cross-examination he testified that he “ explained fully to the young man who took the message, what it was all about, and the consequences that would happen if we didn’t get a reply;” but he also testified that he did not *168 tell the clerk anything about his counsel fees. . The message was never sent, and plaintiff, after waiting in vain for a reply, and supposing his case would not be postponed, took McCarthy, his counsel, with him to Buffalo to attend the trial of the case. On their arrival they found that the case had been postponed to the following week, and they thereupon returned to this city. On the trial the plaintiff recovered, as damages, the expense of traveling to Buffalo and back, for himself and his counsel, and in addition the sum of $250, as a reasonable counsel fee for the time of such counsel going and returning.
This recovery of counsel fee is urged as proper, on the ground that the expense thus incurred by plaintiff was a natural and direct result of defendant’s failure to send the message, and that it may be recovered against defendant on the ground that, by the terms of the message, and the accompanying notice to their agent, it may fairly be supposed to have entered into the coutemplation of the parties when they made the contract; that it was such damage ns might naturally be expected to follow its breach. The question, therefore, is-, was there anything in the message or notice which apprised defendant that, as a consequence of receiving no reply to his message, plaintiff would be put to the expense of taking his counsel to Buffalo in expectation of having to try his cause. There was, of course, no express notice to defendant’s agent that plaintiff proposed to take his counsel with him; nothing was said about counsel or counsel fees, and the testimony that the agent was told “that it was about a cause in Buffalo which we expected would be called, and that it was of great importance we should get a reply early next day, in order that we might know when to go to Buffalo,” conveyed no information to the agent that the speaker was an attorney and counsel in the cause, and would have to go to Buffalo, and would charge plaintiff for the service. The fact conveyed by the message and notice to defendant’s agent, that the plaintiff had a cause coming on for trial in Buffalo, was no ground for inferring that a lawyer would have to be taken from New York to that- city to try it; on the contrary, the fact that the message was directed to an attorney-at-law in Buffalo might, with more reason, justify the inference that plaintiff had a lawyer there to take charge of the case for him.
The utmost that could be claimed, it seems to me, is the expense of two persons going to Buffalo, remaining until the next train, and returning to New York; for the only special consequence of the failure to receive a reply was, as defendant’s agent must gather from the notice, a fruitless journey to Buffalo of the two persons who handed him the message.
*169 The fact that a carrier is notified that a failure to deliver goods sent will result in a loss to the sender, or a breach of the sender’s contract with a third party, with penalties for such breach, will not justify a recovery for all the ■ damages or penalties suffered by the sender, by the non-delivery of the articles by the carrier, but only such of which express notice is given, or which it appears, from the circumstances, must directly result from the breach of the carrier’s duty. On this principle, the recoveries have been sustained in this State against telegraph companies (Rittenhouse v. Ind. Line of Tel., 44 N. Y. 264; Leonard v. New York, &c. Tel. Co., 41 Id. 544, and other cases). Messages delivered to telegraph companies, containing instructions to buy or sell goods, or to deliver merchandise, stock, &c., fully apprise the telegraph companies of the loss by fluctuations of market price, want of market, &c., which the senders of the message must sustain by a failure to transmit their orders. Losses by reason of special contracts, the full terms and penalties attaching to the breach of which are not communicated to the carrier, cannot be recovered against him. To this effect is the case of Die Elbinger Actien-Gesellschaft v. Armstrong, Law Rep., 9 Q. B. 473, and Horne v. Midland Railway Company, Law Rep., 7 Com. Pl. 583. In the latter case, plaintiff delivered a large quantity of shoes—manufactured by them in pursuance of a contract with a Loudon house, and deliverable, by the terms of such contract, in London on February 3,—to the defendant, for carriage to London, and notified defendant’s stationmaster, at the time, that they were under a contract to deliver the shoes by the evening of February 3, in London; and that if they were not delivered, they would be thrown upon plaintiffs’ hands. The goods were not delivered till February 4, and were rejected and returned to plaintiffs, who had to sell them for the best price they could get, viz.°: 2s. 9d. per pair. Plaintiffs claimed, as damages, the difference between that price and what they would have received under their contract, viz.: 4s. per pair; but this was not allowed. The court held that the defendant could not be made liable for an exceptional state of things, not communicated to it at the time; that to warrant a greater recovery defendant must be shown to have had distinct notice of the facts, and to have assented to accept the contract upon these terms; that there was no notice that defendant could be held liable for the difference, and it could be held to have contemplated no other liability than for the difference in the market price—and not the difference between the market price and the contract price—and that it would be hard to charge the carrier when the notice he has received does not disclose the special and exceptional consequences of a breach of the contract.
*170 The judgment should be reversed and a new trial ordered, with costs of appeal in this and the marine court; costs of trial to abide event, unless plaintiff stipulates to reduce the judgment to $50, in which case the judgment will be affirmed for that amount, without costs to either party of this appeal.

 Present, Curtis, Oh. J., Sedgwick and Freedman, JJ.