Reed, J.,
after stating the facts, delivered the opinion of the court.
It may be conceded at the outset:
First. That appellant was guilty of gross negligence in transmitting and delivering the message of Chester sent to appellee on the morning of May 11th.
Second. That being guilty of gross negligence, an action could be maintained against it, and resulting legal damage recovered. The only question to be determined is one as to the amount and character of the damage for which the defendant should be held responsible.
It first becomes necessary to consider the facts and nature of the dispatch sent by Chester. At the time the dispatch was put in the office the facts of the robbery and absconding were not known. The telegram contained no such information. It, in fact, was a statement of facts directly at variance with those that existed, stating that Strauss had gone to Howard to recover a gold watch he had given a man by mistake. The only fact stated in it was that the store was closed ; no facts or suspicions were communicated to the *495 operator in regard to what had actually occurred. All the information he had was that contained in the dispatch — facts requiring no action on the part of Cornwell.
The leading case in regard to damages for negligence in eases of this kind, is Hadley v. Baxendale, 9 Exch. 341.
“Now we think the proper rule in such case as the present is this : — Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered, either arising naturally, i. e. according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances, so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he at the most could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract. For, had the special circumstances been known, the parties might have specially provided for the breach of contract by special terms as to the damages in that case ; and of this advantage it would be very unjust to deprive them. Now the above principles are those by which we think the jury ought to be guided in estimating the damages arisjng out of any breach of contract. ”
That this is the well-settled rule in England, see further: 1 Chit. Pleadg. 395; 1 Saund. Pleadg. & Ev. 344; Morris v. Langdale, 2 Bos. & Pull. 284; Vicars v. Wilcocks, 8 East, 1; *496 Saunders v. Stuart, 1 L. R. C. P. Div. 326. And the same rule is well defined and settled beyond controversy in the United States.
It is said in Shear. & Red. on Neg. § 605, p. 692: “ In case of failure to deliver a telegraphic message relating to business, the measure of damage should be only so much of the loss actually sustained as a person, familiar with business of the kind mentioned in the message, would be able to anticipate from its terms as a probable consequence of failure to deliver it. If the terms of a message do not convey its full value, the sender must inform the operator of that value, if he desires to hold the company to a corresponding responsibility ; and even then he cannot recover for such additional value in case of neglect occurring at any other point than the place at which the message was first received, for the operator is clearly not bound to telegraph the peculiar information which he has received, unless paid for so doing.”
In Field on Dam, § 422, it is said (p. 356) :
“ And where, as we have seen, the import of a telegraphic message is wholly unknown to the company’s agent, to whom it is delivered for transmission, it cannot be assumed that he had in view any peculiar loss as a natural or probable result of a failure to send such message, and in case of a failure to transmit correctly and promptly, the company will be only liable for nominal damages, or the amount paid for sending the message; and the company would not be liable, under such circumstances, on account of loss sustained by the advance or decline in value of stocks or other property.”
In Suth. on Dam. 298-9, it is said:
“ Under this rule, only nominal damages or the price paid for transmitting the message can be recovered for neglecting to transmit or to deliver it,' if its purport' is not explained to the agent of the company or its operator, or if it is written in cipher, or is wholly unintelligible to him; for no other damages in such a case could be within the contemplation of the parties. The operator who receives, and who represents the company, and may for this purpose be said to be *497 the other party to the contract, cannot be said to look upon such message as one pertaining to transactions of pecuniary value and importance, and in respect to which pecuniary loss or damages will naturally arise in case of his failure or omission to send it. If ignorant of its real value and importance, it cannot be said to have been in his contemplation, at the time of making the contract, that any peculiar damage or injury would be the probable result of a breach of the contract on his part.”
In Griffin v. Colver, 16 N. Y. 489, it is said:
“ The broad, general rule in such cases is, that the party injured is entitled to recover all his damages, including gains prevented as well as losses sustained; and this rule is subject to but two conditions: The damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation ; and they must be certain, both in their nature and in respect to the cause from which they proceed.” See also Crain v. Petrie, 6 Hill (N. Y.) 522; Baldwin v. U. S. Tel. Co., 45 N. Y. 744; Candee v. West. U. Tel. Co., 34 Wis. 471; Landsberger v. Mag. Tel. Co., 32 Barb. 530.
Testing the dispatch in question by this rule, and considering the facts, it will readily be seen that there was nothing in it, or in anything that transpired between the parties to inform the operator that any loss whatever could occur to the sender or appellee by a failure to transmit the message at once, or anything involved that would subject the company to liability for anything more than nominal damage. There were no orders to do, or abstain from doing any act, or any facts communicated on which appellee could act, and the testimony shows that he was required to return and investigate before he could act; after receiving the message and communicating with Chester he could do nothing until he returned; that he returned upon the first train, and after his arrival first learned facts upon which he could act. Hence, it follows, that no such liability as is now claimed *498 was contemplated by either party at the time of the contract for the transmission of the message. Had the fact of the loss of the goods been known and communicated in the dispatch, the damage for failure to apprehend Strauss and recover the goods was too remote and contingent to be chargeable to the company.
The rule is clearly and tersely stated in 3 Suth. on Dam. 300, where it is said: — “ The company is liable for such injury as is the direct, natural and necessary consequence of defeating the object which would have been accomplished by the seasonable delivery of the correct message.”
In Rigley v. Hewitt, 5 Exch. 240, Pollack, C. B. said:— “ The law in general takes cognizance only of those consequences which are the natural and probable results of the wrong complained of, and which may reasonably be expected to result, under ordinary circumstances, from the misconduct.”
In 3 Suth. on Dam. 303, the rule is stated to be, “ The damages must flow directly and naturally from the breach of contract, and they must be certain, both in their nature and in respect to the cause from which they proceed. * * * Speculation, contingent and remote damages, which cannot be directly traced to the breach complained of, are excluded.”
In Lowery v. West. U. Tel. Co., 60 N. Y. 198., one Brown left a message at the Chicago office'to be sent to Lowery at Rochester, N. Y., requesting him to send him $500. The message was negligently changed so that it read $5,000, which sum was sent by express. Brown appropriated the money and absconded — about $2,250 was recovered. Lowery brought suit against the telegraph company for the balance. Held by the court of appeals he could not recover. The court said: “ The mistake of the telegraph company was the antecedent of the loss sustained by the plaintiff, but it was not, in a juridical sense, the cause of it. The plaintiff parted with .his money by reason of the message, believing it to have been sent by Brown. He was willing to trust him with $5,000, and the mistake of the company did not induce *499 the confidence which the plaintiff had in his integrity. When the money came to the possession of Brown he held it as the agent and trustee of the plaintiff. The plaintiff did not lose his title to it. He could reclaim it, and he did, subsequently, recover a part of it by legal proceedings. If Brown had not after receiving the money wrongfully converted it, the plaintiff’s loss would have been comparatively trifling. The embezzlement could not reasonably have been expected, and did not naturally flow from the wrong of the defendant.
The cause of the loss was the criminal act of Brown, conceived and executed after the defendant had ceased to have any relation to the money. The plaintiff’s right of action for the negligence was complete before the money was misappropriated by Brown; and if suit had then been brought, the damages could not have been measured by the amount of money sent by the plaintiff. The most that can be said is, that by the negligence of the company an opportunity was afforded Brown to commit a fraud upon the plaintiff. This does not, within the cases, make the company chargeable with the loss resulting from the conversion.”
This decision is quite modern, by one of the ablest courts in the country. The case was carefully considered and many authorities cited and reviewed. It may be considered an extreme case and cutting very close to the line, but it is not necessary to resort to extreme cases of that kind. In every case it has been held that in order to charge the company the loss must be the direct and necessary result of the negligence ; in other words, the negligence must be the direct cause of the loss sustained. See McGrew v. Stone, 53 Pa. St. 440; Bank of Ireland v. Evans, 5 H. L. Cas. 389; Sully v. Duranty, 3 Hurl. & Colt. 279; In re U. S. Ser. Co., 6 L. R. Chy. Ap. Cas. 212; Barker v. Perkerton, 2 L. R. Exch. 340.
Applying this well settled rule of law to the facts of this case, and it at once becomes apparent that the value of the goods could not be recovered from the company. The loss occurred by the criminal act of the agent before the message was delivered to the company.
*500 The cause of the loss was not the negligence of the company, but the crime of Strauss, — a matter in which the company was in no manner concerned. The loss had alreadjr occurred and was not the result of any act or negligence of appellant.
If the law, which I have attempted, above, to apply, is not conclusive of the case, there is another important factor involved that may be briefly considered, viz., the negligence of appellee. The original loss was that by the robbery of Strauss.
All the connection of the telegraph company was in the transmission of messages to apprehend him and recover the property. The theory of plaintiff below and the court was that the plaintiff by reason of its negligence prevented the capture and recovery, hence, was liable for the loss, notwithstanding the delay in ascertaining the fact of the robbery until 4 R. M. on the 11th, and the consequent delay in sending telegrams for his capture. As the result of those sent out between that hour and an early hour the next morning, some of them having been sent from Pueblo, Strauss was arrested on the 12th, at Norton, Kansas, with the goods in his possession, and two telegrams announcing the fact were sent to appellee at Pueblo, but as early as 8.20 A. M. of that day he had left for Denver, leaving no address or instructions to enable him to receive any messages that might arrive in answer to those sent, and leaving no person to attend to the matter in his absence. He could not be found; the city marshal and sheriff refused to receive them; they were advertised by the company as undelivered messages. It does not appear that he had any communication with the Pueblo office until the 15th, when they were re-sent to him at Buena Yista. The sheriff in Kansas in the meantime had retained the prisoner and property twenty-four hours, and, failing to receive instructions, had discharged him. This was solely the negligence of the plaintiff. No effort was made to -connect the defendant corporation with it. The liability of the defendant being predicated only upon the escape of Strauss *501 with the goods, and that such escape was due to negligence in regard to the Chester telegram, we are at a loss to find upon what theory the company was held liable for the value of the goods after the arrest had been made and goods recovered, when the failure was solely attributable to the negligence and oversight of the plaintiff.
It is unnecessary to say that in this class of cases, as well as in all others where the question of negligence is involved, the contributory negligence of the plaintiff, when established, will .prevent a recovery,.although in this case the decision, as I have shown, need not be put upon the ground of contributory negligence; yet, if no other questions were involved, under the facts and circumstances of this case, I should not hesitate to hold that the negligence of the plaintiff was such as to preclude a recovery.
The suit is maintainable against the company for negligence in transmitting and delivering the message, but the damage cannot embrace the value of the goods nor the expenses incident to and for the purpose .of arresting Strauss and recovering the goods, but must be confined to the price paid for the transmission of the message, and any incidental expense consequent upon the delay up to the time the plaintiff arrived at home and learned of the robbery, consequently, can only be nominal.
The judgment will be reversed and cause remanded.

Reversed.